745 A.2d 1026

**ADMIRAL MORTGAGE, INC.**

v.

**Calvin COOPER.**

**No. 41, Sept. Term, 1999.**

Court of Appeals of Maryland.

Feb. 7, 2000.

Reconsideration Denied March 7, 2000.

534

Michael D. Fraidin, Baltumore, for Petitioner.

Samuel Blibaum (Minda F. Goldberg, on brief), Towson, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

WILNER, Judge.

Respondent, Calvin Cooper, filed suit in the Circuit Court for Baltimore County to recover unpaid commissions from his erstwhile employer, Admiral Mortgage, Inc. The action was brought pursuant to Maryland Code, §§ 3–505 and 3–507.1 of the Labor and Employment Article (LE), and, in accordance with the latter section, Cooper sought not only the unpaid commissions but also treble damages, attorneys' fees, and costs. Admiral filed a counterclaim to recover, on an unjust enrichment theory, what it characterized as a gratuitous payment to Cooper of $460.93.

The court entered judgment in favor of Cooper on Admiral's counterclaim. Cooper's complaint was submitted to a jury, which (1) determined that Admiral owed Cooper $9,666.07 in unpaid commissions, (2) found that payment of the commissions was not withheld because of a bona fide dispute, and (3) awarded damages of $28,000 plus $12,709 in attorneys' fees. It is evident that, in finding unpaid commissions in the amount of $9,666.07, the jury credited Admiral with the $460.93 it had paid to Cooper, for the amount found was exactly $460.93 less than the $10,127 in commissions that Cooper's evidence, and Admiral's contingent admission, showed he was owed. The $28,000 amounted to $998 less than the treble damages permissible under the statute.

In an unreported opinion, the Court of Special Appeals affirmed the judgment, and we granted *certiorari* to consider, principally, whether the trial court erred in allowing the jury to determine the issue of treble damages, attorneys' fees, and costs. Admiral complains that those issues should have been resolved by the judge.[1] Other issues raised in the petition are

---

1. The complaint as to costs is moot, as the jury determined that amount to be zero.

whether (1) the court erred in allowing Cooper's attorney to testify with respect to the attorneys' fees, (2) there was sufficient evidence of a lack of bona fide dispute to submit the issue of treble damages and attorneys' fees to the jury, and (3) the court erred in vacating a default judgment that Admiral had briefly obtained on its counterclaim. We shall hold that the court erred in submitting the issue of attorneys' fees to the jury, but that none of Admiral's other complaints have merit. We shall therefore direct a remand for the judge to consider and determine the issue of attorneys' fees but otherwise affirm the judgment of the Court of Special Appeals.

## BACKGROUND

Cooper worked for Admiral as a "mortgage originator" or "loan officer" from January to August, 1995. His job was to generate and pursue leads on potential mortgage loans. According to Admiral's president, Floyd Rothstein, a loan officer was to obtain a completed application and other necessary documents and then turn the file over to another employee for further processing and closing. If Admiral initially generated a lead that Cooper developed, Cooper was to receive a commission equal to 20% of the fee received by Admiral when the loan was closed. If Cooper generated the lead, his commission was to be 40%.

When Cooper quit his employment in August, 1995, there were pending eleven outstanding loan applications that he had developed but which had not yet closed. Cooper said that he offered to continue to assist Admiral in processing those applications but that Admiral declined his offer. Within a few months after he left, five of the loan applications were approved, including a large loan that closed in September, and Cooper made demand for payment of commissions on those loans. Admiral declined, taking the position that no commissions were due on any loan that had not closed by the time Cooper left.[2] Admiral eventually conceded that, *if* Cooper was

---

**2.** According to Cooper, Rothstein offered him commissions of 10%, which Cooper declined. Rothstein denied making such an offer.

entitled to commissions at the 20% and 40% rates, he would be entitled to $10,127 on the five loans.

At some point, notwithstanding its position that *no* commissions were due on the five loans, Admiral direct-deposited into Cooper's bank account $460.93, which it claims was a gift—a gratuitous 10% commission on two of the smaller loans that closed after Cooper departed.[3] The $460.93 represented gross commissions of $516 on the two loans, less taxes and employee contributions for social security and medicare that Admiral deducted. In its counterclaim, Admiral sought to recover the entire $516 on the ground that Cooper's retention of that amount was inequitable.[4]

The issues before us arose in slightly different ways during the litigation and are best dealt with discretely.

### THE COUNTERCLAIM

Cooper filed his lawsuit in April, 1996. Admiral's counterclaim, seeking recovery of $516, was filed in December, along with an answer to Cooper's complaint.[5] Cooper initially

---

3. The remittance slip shows a date of September 29, 1995, which would seem to be consistent with when those loans closed and with the testimony of Rothstein as to when he deposited the funds. In its counterclaim and in a motion to dismiss Cooper's complaint, however, Admiral claimed that the amount was paid in September, 1996. In its recounting of the facts, the Court of Special Appeals stated that the amount was paid in September, 1998. The actual date is less important than the fact that the amount was paid, by direct deposit and without prior notice to Cooper, *after* Admiral had announced its position that Cooper was not entitled to any commissions on loans that closed after he quit.

4. The counterclaim seems to have been part of an aggressive, "hardball," approach taken by Admiral. In a motion filed shortly after the filing of Cooper's complaint, Admiral asked for "sanctions" under Maryland Rule 1–341, claiming that the action was brought in bad faith or without substantial justification. Accompanying that motion was a letter from Admiral's attorney threatening to pursue tort claims against Cooper for defamation, injurious falsehood, and putting Admiral in a false light. It does not appear that those claims were ever actually filed.

5. The answer had been preceded by a motion to dismiss.

moved to strike the counterclaim on the ground that it was untimely but later withdrew that motion. He neglected, however, to answer the counterclaim. On April, 1997—four days before trial—Admiral presented to a judge and had signed an order entering a default judgment for $516, based on the lack of an answer. The certificate of service on the motion shows that the motion and proposed order were hand-delivered to counsel for Cooper the same day they were presented to and signed by the judge.

The entry of such a judgment was clear error. Under Maryland Rule 2–613, the required procedure would have been for Admiral to seek and obtain an *order* of default, followed by notice to Cooper and the right of Cooper, within 30 days, to move to vacate the order. A *judgment* of default is permitted only if such a motion to vacate is not filed or, if filed, is denied. Cooper immediately moved to strike the default judgment, noting that it was entered without prior notice to Cooper and that trial was already scheduled. Upon consideration of the motion, the court recognized its error and struck the judgment.

At the conclusion of trial, Cooper moved for judgment on the counterclaim, which the court granted. The court noted that there were two reasons posited as to why Admiral paid the $460.93—one, offered by Admiral, was that the payment was a gift, given out of goodness because Cooper was then unemployed and needed the money, and the other, urged by Cooper, was that it constituted part of the commissions owed on two of the loans that closed after Cooper left. The court concluded that, if the money was paid as a gift, as urged by Admiral, Admiral had no right to recover it; it is not inequitable, and therefore not an unjust enrichment, for a donee to retain a gift freely given. If the jury were to conclude, on the other hand, that the money was paid as part of the commission due by Admiral, the jury could deduct it from the balance of the commissions it found due. The court offered to instruct the jury to that effect, but it does not appear that such an

instruction was requested, and no objection was lodged to the court's ultimate omission to give it.

Admiral complains about both the striking of the default judgment in its favor and the ultimate entry of judgment against it on the counterclaim. Neither complaint has the slightest merit. The default judgment was properly stricken because it was improperly entered; it would have been error for the court not to have vacated that judgment. For the reasons given by the court, the ultimate judgment entered against Admiral on the counterclaim also was proper. Apart· from the fact that Admiral is wrong on the merits of its complaints, the fact is that Admiral has suffered absolutely no harm from the court's actions. As noted, the jury gave full credit to Admiral for whatever it might have been entitled to under the counterclaim. The whole issue is a self-created tempest in a teapot.

## BONA FIDE DISPUTE

The statutes on which Cooper sued are part of Maryland's Wage Payment and Collection Law, codified as LE §§ 3–501 through 3–509. Under that law, the term "wage" includes a commission. § 3–501(c)(2). Section 3–505, dealing with the payment of wages on termination of employment, requires an employer to pay all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated. Under that statute, if Cooper was due a commission on the closing of a loan generated or developed by him, the commission should have been paid, at the latest, when the loan was closed.[6]

---

6. There appears to be some ambiguity in the law with respect to when commissions must be paid. Section 3–502 requires employers to set regular pay periods which, unless the employee is an "administrative, executive, or professional employee," must be at least every 2 weeks or twice in each month. Although the parties disagreed over whether Cooper was entitled to a commission on a loan that closed after he left Admiral's employment, there was no dispute that Cooper's sole compensation was in the form of commissions based on the fees received by

Section 3–507.1 gives an employee a civil cause of action to recover wages withheld in violation of § 3–505. It provides, in relevant part:

"(a) ... [I]f an employer fails to pay an employee in accordance with ... § 3–505 of this subtitle, after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages. (b) If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."

The question of whether Admiral's withholding of the commissions was the result of a bona fide dispute has relevance only as to Cooper's entitlement, under § 3–507.1(b), to additional (up to treble) damages, attorneys' fees, and costs. The right to recover the commissions themselves, provided for in § 3–507.1(a), does not depend on whether they were withheld as the result of a bona fide dispute.

What constitutes a "bona fide dispute," of course, depends on the circumstances. The term itself has been defined in a number of ways. In determining whether there is a "bona fide dispute" regarding a claim sufficient to preclude a creditor from filing or joining in a petition for involuntary bankruptcy, some Federal courts have looked to whether "there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *See In Re Rimell,* 946 F.2d 1363, 1365 (8th Cir.1991), *cert. denied, Rimell v. Mark Twain Bank,*

---

Admiral upon the closing of loans generated by him and that no commission was due until the loan closed. In setting the periodic pay periods, the statute, though including a commission within the definition of "wage," does not seem to take account of such an arrangement, where the commission is neither due nor payable until the happening of a future event. We need not deal with that issue here. Cooper has never claimed an entitlement to his commissions prior to the closing of the loans from which they arise.

504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 202 (1992), citing other cases. In determining whether a claim, compromised in an accord and satisfaction, results from a "bona fide dispute," the Washington courts have required that the claimant "have a bona fide belief in the validity of his or her position with respect to the claim." *Ward v. Richards & Rossano, Inc., P.S.,* 51 Wash.App. 423, 754 P.2d 120, 125 (1988), citing *Harding v. Will,* 81 Wash.2d 132, 500 P.2d 91 (1972). *See also Estate Landscape v. Mountain States,* 844 P.2d 322, 326 (Utah 1992) and *S & G Inc. v. Intermountain Power Agency,* 913 P.2d 735, 739 (Utah 1996) (defining the term, for accord and satisfaction purposes, as a "good-faith disagreement over the amount due under the contract"). Implying a good faith requirement in the Arizona wage payment statute, an Arizona appellate court concluded that the treble damage penalty should not be invoked "when there is a reasonable good faith wage dispute between the employer and the employee." *Apache East, Inc. v. Wiegand,* 119 Ariz. 308, 580 P.2d 769, 773 (Ariz.App.1978).

In this case, the circuit court used part of the definition of "bona fide" given in BLACK'S LAW DICTIONARY and instructed the jury that a party has a bona fide dispute if that party acts in good faith and without deceit or fraud in pursuing that dispute. Admiral generally accepts that conception of the term but focuses on the element of the absence of fraud, contending that there was no evidence of fraud on its part. Mischaracterizing some of the evidence, it urges that Cooper left "with the understanding that he was not entitled to any commissions" and that Admiral made "no assurances that Cooper would receive any commissions if any of the five loans eventually closed." That is not what Cooper said. He made clear that he fully expected to be paid when the loans closed.[7]

---

7. The most blatant misrepresentation was Admiral's statement, in its brief, that "Cooper also testified that if any of the loans had closed some time after he left, then he would not be entitled to any commissions." The testimony referred to dealt with a hypothetical question asked on cross-examination, whether Cooper would be entitled to a commission if a loan he generated closed two years after he left, and, as

All of the definitions articulated by the courts focus really on whether the party making or resisting the claim has a good faith basis for doing so, whether there is a legitimate dispute over the validity of the claim or the amount that is owing. The issue is not whether a party acted fraudulently; fraud is certainly inconsistent with the notion of "bona fide" or "good faith," but it is not required to establish an absence of good faith. The question, simply, is whether there was sufficient evidence adduced to permit a trier of fact to determine that Admiral did not act in good faith when it refused to pay commissions to Cooper on the five loans that closed after he terminated his employment. Clearly, there was such evidence.

Admiral's position throughout was that no commissions were due on loans that close after a loan officer leaves. That was the sole asserted basis on which Admiral claimed that nothing was due to Cooper on the five loans. Evidence was presented, however, that Admiral paid commissions to another loan officer, who left Admiral's employ after Cooper, on loans that closed after that employee left. Admiral offered an explanation for why commissions were paid to that employee but not to Cooper, but the jury was not required to accept that explanation. Nor was the jury required to believe that the $460.93 voluntarily paid to Cooper was a gift; it could, and apparently did, believe that that payment represented part of a commission, which would be inconsistent with Admiral's position that *no* commissions were due but corroborative of Cooper's testimony that Rothstein had offered to pay the commissions at the reduced rate of 10%. Indeed, the fact that Admiral deducted taxes and social security and medicare contributions belies the assertion that the money was a gift.

There were a number of other inconsistencies as well in Admiral's position. Mr. Rothstein said that, when a loan

---

to that, he replied in the negative—"[a]fter being away for two years now I wouldn't be entitled." The loans upon which commissions were sought closed within a month or two after Cooper left and, as noted, he maintained throughout that he was entitled to commissions on those loans.

officer left, any of his or her pending applications would be worked on by someone else, and that person would be paid the commission when the loan closed. Yet he admitted that, although one or more other employees worked on Cooper's pending applications, no commissions were paid to anyone when those loans closed. Notwithstanding that Cooper, on several occasions, asked for documentation regarding the five loans that closed and the six loans that Admiral claimed did not, no records were ever produced regarding the six loans and only settlement sheets were produced concerning the five. Admiral claimed that the other records were destroyed or could not be found. There was, in other words, a significant credibility issue that permeated Admiral's entire case.

■ On this evidence, it cannot be said, as a matter of law, that the commissions were withheld as the result of a bona fide dispute. The issue was properly reserved for resolution by the jury.

## EVIDENCE OF ATTORNEYS' FEES

During discovery, Admiral asked Cooper to disclose the names of any expert witnesses he intended to call, the substance of their opinions, and any reports they had rendered. It also asked for a listing of each item of damage claimed by Cooper, the method by which it was calculated, and any supporting documentation. No experts were disclosed in response to those requests, nor was any amount of attorneys' fee disclosed as an item of damages. At trial, the issue of attorneys' fees first arose when Cooper was asked about his retaining of an attorney and an objection was lodged. His attorney had apparently prepared a summary statement that he intended to offer, to which Admiral objected, largely on the ground that the statement had not previously been disclosed. The court directed Cooper's attorney to prepare a detailed bill and to deliver a copy of it to Admiral's attorney, who would have the evening to examine it.

The next morning, the attorney informed the court that he had prepared and sent a more detailed statement to Admiral's

attorney and was prepared to testify as an expert as to the reasonableness of the bill. Admiral objected both to the statement and to the attorney's testifying as an expert, on the ground that he had not had an opportunity to prepare for that evidence. The court overruled the objection and, eventually, allowed the attorney to testify about the statement and that the fee, of $12,709, was reasonable. It was based on just over 83 hours of time, billed at $150 per hour, plus $310 in advanced costs. The statement was then admitted into evidence.

 Admiral cites a number of cases in which this Court and the Court of Special Appeals have affirmed trial court decisions precluding the admission of evidence not disclosed in response to valid discovery requests. What it overlooks, however, is the governing principle that the appropriate sanction for a discovery or scheduling order violation is largely discretionary with the trial court, and that the more draconian sanctions, of dismissing a claim or precluding the evidence necessary to support a claim, are normally reserved for persistent and deliberate violations that actually cause some prejudice, either to a party or to the court. See *Starfish Condo. v. Yorkridge Serv.*, 295 Md. 693, 458 A.2d 805 (1983); *Broadwater v. Arch*, 267 Md. 329, 297 A.2d 671 (1972); *Evans v. Howard*, 256 Md. 155, 259 A.2d 528 (1969). We find no abuse of discretion in this case. Admiral knew from the beginning that a claim for attorneys' fees was being made and that the full amount of those fees could not be determined at least until trial was completed. Admiral had an opportunity, albeit a limited one, to examine the detailed statement produced by Cooper's attorney and to challenge either its accuracy or reasonableness. In any event, as we are remanding for further consideration of the attorney's fees, Admiral will have another opportunity to make such a challenge.

## JUDGE OR JURY?

As noted, the main issue we took the case to examine is whether the determination of additional statutory damages,

attorneys' fees, and costs under § 3–507.1 is to be made by a judge or, when the plaintiff has sought a jury trial, by the jury. We noted the prospect of that issue in *Battaglia v. Clinical Perfusionists*, 338 Md. 352, 358 n. 6, 658 A.2d 680, 683 n. 6 (1995), but found it unnecessary to address in that case.[8] It is now clearly before us.

Admiral views § 3–507.1(a) as establishing the private right of action by an employee to recover unpaid wages. It agrees that that action is triable before a jury, if the action is filed in a circuit court. Section 3–507.1(b), however, deals with penalties, not the basic right to recover the wages. It states that, in an action under sub-section (a), if "a court" finds that the

---

8. Admiral alleges in its brief that we decided the issue in *Battaglia*. Quoting an excerpt from a footnote in the Opinion, taken out of context, it avers that, in *Battaglia*, "the Court stated, 'that even if the jury properly found a violation of the Act (3–507.1), it was nevertheless the duty of the court, and not the jury, to apply the multiplier.' " It uses that excerpt, then, as the basis for its wholly inaccurate statement that "Admiral Mortgage's interpretation is supported by the only case in which the Court of Appeals addressed the meaning of 'the court' under Section 3–507.1."

That is *not* what we said in *Battaglia*. The plaintiff there had a one-year employment contract but was discharged after only a month. Although she was paid in full for the services rendered prior to the termination, she sued for both breach of contract and, under § 3–507.1, for treble damages based on the balance of the wages that would have been due under the contract had it not been wrongfully terminated. The case was tried to a jury, which returned a verdict of $16,300 for breach of contract and $36,000 under § 3–507.1. The trial court entered judgment NOV on the § 3–507.1 claim, and we affirmed that judgment, concluding that the multiplier and attorneys' fees allowed under § 3–507.1(b) applied only with respect to wages for services rendered prior to termination of the employment and not to wages for services that would have been provided in the future had the employment not been terminated. Although that holding rendered moot the issue of whether the multiplier and attorneys' fees allowable under § 3–507.1(b) was for the judge or the jury to determine, we noted that the employer had not raised the issue in any event. What we said in that regard was that the employer *"has not presented any alternative argument* that, even if the jury properly found a violation of the Act, it was nevertheless the duty of the court, and not of the jury, to apply the multiplier." (Emphasis added). The language quoted by Admiral was *not* expressed as a holding and could not reasonably be interpreted as a holding. We do not appreciate Admiral's misleading averment to the contrary.

employer withheld the wages in violation of the subtitle and not as a result of a bona fide dispute, "the court" may award the additional damages, attorneys' fees, and costs. Admiral construes the word "court" as meaning the judge, not the jury. Otherwise, it says, if "court" meant "jury," there would be no distinction between a "court" trial and a "jury" trial. It cites a number of cases, arising under statutes allowing a "court" to award multiplier damages or attorneys' fees, in which a judge, rather than a jury, has made those awards. It notes, in particular, the greater expertise that a judge has in determining the reasonableness of attorneys' fees.

Cooper, on the other hand, views the word "court" in a more generic sense, as meaning the institution, which, depending on the case, may act through either a judge or a jury. The additional amounts allowed by § 3–507.1(b), he says, are part of his remedy, to be considered by whomever is the trier of fact in the case. To hold otherwise, he warns, is to deprive him of his right to have a jury determine disputed facts and how much in damages to award.

As we indicated earlier, we think there is a distinction to be drawn between the additional damages and an award of attorneys' fees (and costs). That distinction rests on a number of considerations. With respect to the additional damages, unlike other statutes that *require* an automatic multiplier, which admit of no discretion, the additional damages allowed under § 3–507.1(b) is neither required to be awarded nor fixed in amount. The plaintiff *may* be awarded an amount "not exceeding 3 times the wage." Not only is *any* award discretionary, but the amount that may be awarded is flexible, from zero up to three times the wage. That kind of discretion is ordinarily committed to the trier of fact, subject, of course, if the trier of fact is a jury, to the authority of the judge to order a remittitur. Attorneys' fees and costs are another matter. For one thing, they may continue to accrue after the verdict is rendered, if post-trial motions or appeals are filed, so the jury cannot determine them definitively. Attorneys' fees, moreover, when allowed, have traditionally been set by

the judge, who is usually in a far better position than a jury to determine what is reasonable.

Statutes allowing additional damages based on a multiplier that is applied to an award of compensatory damages are generally of two types. One type is automatic; it *requires* that an award of compensatory damages be increased by a specified factor, which may be either a whole number, such as doubling or tripling, or a fraction. The most common example of this type of approach is in the Federal and State antitrust laws and in the Federal RICO statute. *See* 15 U.S.C. § 15(a) and Maryland Code, § 11–209(b)(4) of the Commercial Law Article providing, in a private action for antitrust violations, that if an injury is found, the plaintiff "shall recover" or "shall be awarded" three times the amount of actual damages, and 18 U.S.C. § 1964(c), establishing a civil remedy for persons injured by reason of a violation of the RICO law and providing that the injured person "shall recover threefold the damages he sustains." [9]

The prevailing practice under the Federal antitrust and RICO statutes is for the jury to determine the compensatory damages and for the judge then to apply the automatic multiplier and triple that amount. *See Pollock & Riley, Inc. v. Pearl Brewing Company*, 498 F.2d 1240, 1243 (5th Cir.1974)

---

**9.** The automatic trebling of compensatory damages is a common feature in statutes regulating aspects of commercial enterprise, both State and Federal. *See,* for example, § 11–109(b)(4) of the Commercial Law Article, providing for automatic treble damages in an action under the Foreign Discriminatory Boycotts Act; § 14–505 of that Article, making a person who sells a fine print in wilful violation of the fine print law liable "for an amount equal to three times" the purchase price; § 14–1109(b), dealing with violations of the layaway sales act. Some regulatory statutes cast a civil sanction in the form of a forfeiture of some multiple of illicit gains. *See,* for example, § 12–807 of the Commercial Law Article, requiring a mortgage broker who collects an unlawful finders' fee to "forfeit" to the borrower the greater of three times the amount of the fee or $500; § 12–918, providing that a creditor-grantor who violates the revolving credit law shall forfeit to the borrower "3 times the amount of interest and charges [improperly collected]"; and 12 U.S.C. § 2607(d)(2), providing liability under the anti-kickback provisions of the Real Estate Settlement Procedures Act "in an amount equal to three times" the amount of the unlawful charge.

(Congress's authorization in 15 U.S.C.A. § 15 to triple the award of damages is a matter of law to be applied by the district court without interference from the jury). Indeed, the Federal courts have held, in both antitrust and RICO actions, that it is error for the jury even to be told about the trebling provision. *See HBE Leasing Corp. v. Frank,* 22 F.3d 41, 45–46 (2d Cir.1994) and cases cited there. The automatic trebling provision has been held to be "irrelevant to the jury's deliberations," *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1308 n. 7 (7th Cir.1987), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989), and concern has been expressed that informing the jury of the provision may cause it to adjust its compensatory award and thus distort its true function of finding damages. *See HBE, supra,* 22 F.3d at 46, citing other cases. That view prevails notwithstanding that neither the antitrust nor the RICO statute specifies whether the trebling is to be done by the judge or the jury.

The alternative approach, exemplified by LE § 3–507.1, is for the statute to *permit,* rather than *require* additional damages based on a multiplier, when a predicate fact, such as an absence of good cause or bona fide dispute, is established. *See also* §§ 8–203(e)(4) and 8–203.1(a)(7) of the Real Property Article, allowing multiple damages for violations by landlords of requirements governing security deposits. When either the ability to award the additional amount or the amount that can be awarded is discretionary, rather than fixed, there is no basis for a concern that the jury might be inclined to find less in compensatory damages than otherwise would be justified, for it would remain in control of any additional statutory award.

The additional amount, though at least partially punitive in nature, may also have a compensatory element to it, especially in a wage-withholding case. The Legislature no doubt recognized, as we do, that most working people are dependent on the regular payment of the wages due them. If payment is withheld, they may face more than just the economic loss of the money, which pre-judgment interest allowable as a matter of common law ordinarily reimburses. They may suffer sig-

nificant consequences from being unable to meet their own weekly or monthly obligations, ranging from embarrassment, to late charges, to repossessions, eviction, and, if the employee is responsible for child support, the prospect of coercive court proceedings and the loss of various licenses and privileges. Recovery later of just the unpaid wages under § 3–507.1(a), even if accompanied by pre-judgment interest, may not begin to compensate for those consequential losses. On the other hand, in a given case, there may be no such consequential damages and the amount of withheld wages may be relatively minor. Whether punitive or compensatory in nature, the determination of discretionary damages is quintessentially a matter for the trier of fact.

▆ Most States have some form of wage payment law, and, although most of those laws allow a private right of action by employees and provide for some form of penalty if wages are improperly withheld, they differ in terms of the nature of the penalty, how it is calculated, and whether it is automatic.[10] There is, accordingly, no uniform body of case law that we can turn to in this particular regard; of the few cases that have been decided by appellate courts, most were tried non-jury, so the issue before us did not arise. *See Apache East, Inc. v. Wiegand, supra,* 119 Ariz. 308, 580 P.2d 769; *Rodwell v. Serendipity, Inc.,* 99 Idaho 894, 591 P.2d 141 (1979); *Beasley v. Mincomp Corp.,* 683 P.2d 370 (Colo.App.1984); *Kennedy v. Leo Payne Broadcasting,* 648 P.2d 673 (Colo.App.1982); *State ex rel. Christopher v. Planet Insurance Co.,* 321 A.2d 128

---

**10.** *See* M.C. Dransfield, Annotation,*Validity, Construction, and Effect of Statutes Requiring Immediate Payment of Wages on Discharge,* 90 A.L.R.2d 606 (1963) and 1993 Supp. *Compare* N.C. Gen.Stat. § 95–25–22(a1) ( employee entitled to double the amount unless employer shows violation was in good faith); Col.Rev.Stat. § 8–4–104(3) (employee entitled to greater of 150% of wage due or double daily wage for 10 days); Ill.Rev.Stat. ch. 820, § 115, ¶ 14(b) (employee entitled to penalty of 1% for each day wage withheld up to double sum of unpaid wages); Ind.Code Ann. § 22–2–5–2 (West 1991) (employee entitled to 10% for each day wage withheld up to double amount of wages due); Mass. Ann. Laws, ch. 149, § 150 (employee may sue for treble damages); Pa. Stat. Ann. title 43, § 260.10 (employee entitled to claim wages plus, as liquidated damages, greater of 25% of amount due or $500).

(Del.Super.1974). In its initial version, the bill that enacted § 3–507.1 provided for an automatic trebling. It was amended, however, apparently at the behest of the Maryland Chamber of Commerce and with the support of the Maryland State Bar Association, to make that penalty discretionary. That indicates to us, in line with the general discussion above, an intent by the Legislature to leave the determination in the hands of the trier of fact, which ordinarily determines both compensatory and punitive damages. We find no error, therefore, in the decision to allow the jury to determine the extent of additional damages to Cooper.

Nearly all of the statutes that allow additional or punitive damages, and a number of statutes that do not, permit the recovery of attorneys' fees and costs.[11] Almost universally, the practice has been for the attorney's fees and costs to be determined and awarded by the judge. That is explicit in the Federal system. Federal Rule of Civil Procedure 54(d)(2) requires that claims for attorneys' fees and related nontaxable expenses be made by post-judgment motion addressed to the court, "unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." That exception, according to the Advisory Committee Note following the rule, applies to "fees recoverable as an element of damages, as when sought under the terms of a contract." It does not apply to attorneys' fees allowed only by statute, which have been treated in the same manner as automatically multiplied damages—determined by the judge and not even mentioned to the jury. *See HBE Leasing Corp. v. Frank, supra,* 22 F.3d 41 and cases cited at 46. We are aware of no case in which, in a wage payment or other statutory allowance case, the determination of reasonable attorneys' fees has been held to be a jury issue.[12]

---

11. In 1986, the Supreme Court observed that there were over 100 separate Federal statutes providing for the award of attorneys' fees. *See Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 562, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439, 454 (1986).

12. Cooper cites *Camer v. Lupinacci,* 96 Md.App. 118, 623 A.2d 726 (1993) as "recogniz[ing] the right of a jury to award treble damages and

There are good reasons for having the judge, rather than a jury, determine the amount of fee to be paid by the losing party under a statutory fee-shifting provision. As noted by the Supreme Court in *Pennsylvania v. Del. Valley Citizens' Council,* 483 U.S. 711, 722, 107 S.Ct. 3078, 3085, 97 L.Ed.2d 585, 596 (1987), "[f]ee-shifting removes the interest a paying client would have in ensuring that the lawyer is serving the client economically; the task of monitoring the attorney is shifted to the judge in separate litigation over fees if the plaintiff wins." In the Federal system, attorneys' fees awarded under fee-shifting statutes are calculated in accordance with the "lodestar" approach—the product of reasonable hours times a reasonable rate. *Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). The determination of those two items, however, involves a number of factors that are both subjective and judgmental. In Maryland, they would include consideration of the factors set forth in Rule 1.5 of the Maryland Rules of Professional Conduct, among which are "the novelty and difficulty of the questions involved" and "the skill requisite to perform the legal service properly." [13] Those

---

attorneys' fees" in an action under § 8–203 of the Real Property Article to recover an improperly withheld security deposit. It is true that the jury in that case awarded treble damages and attorneys' fees on the two claims submitted to it, but the judgments entered on those awards were vacated because they were duplicative of summary judgments entered earlier by the court. The Court of Special Appeals never held that the determination of attorneys' fees under § 8–203 was properly for the jury. We note that in *St. Luke Evangelical Lutheran Church v. Smith,* 318 Md. 337, 568 A.2d 35 (1990), this Court permitted a jury, in an action for defamation and invasion of privacy, to consider the reasonable attorney fees actually incurred by a plaintiff in the determination of punitive damages, but the issue there was whether those fees were a proper element of punitive damages, not whether statutorily authorized fees were to be determined by a jury.

**13.** Complicating even that examination is the issue, which ultimately we would need to decide, of whether, if the "lodestar" approach is to be used, the amount determined in accordance with that approach is subject to increase or decrease to account for other factors, including the fee agreement between the lawyer and the plaintiff, especially where the plaintiff's lawyer is on a contingency fee arrangement. In that regard, *compare Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) *with Pennsylvania v. Del. Valley Citizens'*

factors are more judgmental than fact-based and are more apt to be within the expertise of a judge rather than of lay jurors.

██ For all of these reasons, we conclude that, although the discretionary additional damages is for the trier of fact to determine, the determination of attorneys' fees, and costs, is for the judge. Although we presently have no rule comparable to Fed.R.Civ.P. 54(d)(2) or the procedure set forth in 42 U.S.C. § 1988, a generally similar post-verdict approach may be used. We shall therefore affirm the judgment of the Court of Special Appeals in all respects save the award of counsel fees and, as to that, we shall direct a remand to the circuit court for further proceedings regarding that award, to be conducted by a judge. In directing that remand, we do not suggest that the amount of the fee awarded by the jury in this case was inappropriate—only that the fee needs to be determined by a judge.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE IN PART JUDGMENT OF CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND ISSUE OF ATTORNEYS' FEES TO THAT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.

---

Council, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995) and Gallo v. Salesian Soc., Inc., 290 N.J.Super. 616, 676 A.2d 580 (1996). See also Com., Dept. of Environ. Resources v. PBS Coals, Inc., 677 A.2d 868 (Pa. Commw.1996), and Md.-Nat'l Cap. Park & Planning Comm'n v. Crawford, 307 Md. 1, 511 A.2d 1079 (1986), a pre-Burlington case.