857 A.2d 604

**Betty FLAA**

v.

**MANOR COUNTRY CLUB.**

**No. 1102, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 8, 2004.

Linda H. Thatcher, Greenbelt, for Appellant.

Charles E. Nelson, Jr. (Amy Leete Leone, McCarthy Wilson, on the brief), Rockville, for Appellee.

Panel: HOLLANDER, ADKINS, and BARBERA, JJ.

BARBERA, Judge.

We are asked in this case to review the award of attorney's fees in a discrimination case filed more than ten years ago, with the Montgomery County Office of Human Rights ("MCOHR"),[1] by appellant, Betty Flaa, against appellee, Manor Country Club. The award of attorney's fees has been the subject of two petitions for judicial review by the Circuit Court for Montgomery County, the latter of which is now before us.

In her first petition for judicial review, appellant contested the decision of the Montgomery County Public Accommodation Panel of the MCOHR ("Panel") to award her $3,000.00 in attorney's fees. The circuit court reversed that decision and remanded with instructions for the Panel to apply the appropriate factors set forth in the county code for calculating a reasonable fee award. The Panel issued its second award of attorney's fees for $22,440.00, and appellant, still aggrieved, filed a second petition for judicial review. The court subsequently affirmed the Panel's award of attorney's fees.

Appellant has appealed from the court's order affirming that award of attorney's fees. She raises the following issue for our review:

Whether the Montgomery County Circuit Court committed an error of law by affirming the Public Accommodations Panel's Order and Opinion Awarding Attorney's Fees, in which the Panel failed to apply the lodestar method in its calculation of attorney's fees and costs.

---

1. At the time the underlying complaint was filed, the MCOHR was known as the Montgomery County Human Relations Commission.

Because we conclude that the Panel did not properly analyze the fee issue, we vacate the judgment of the circuit court affirming the Panel's decision and remand the case for further proceedings consistent with this opinion.

## FACTS AND LEGAL PROCEEDINGS

Inasmuch as the underlying facts giving rise to appellant's discrimination claims against appellee are not the focus of this appeal, we shall not chronicle all of the details of those claims. We shall present only those facts necessary for context, and concentrate our attention upon the facts pertaining to appellant's request for attorney's fees.

On December 23, 1993, appellant filed a marital status discrimination claim with the MCOHR. She averred that appellee's policies, which restricted access to and use of appellee's golf course, were discriminatory on the basis of marital status and resulted in disparate treatment of her because of sex.[2] Appellant thereafter amended her claim to add a sex discrimination claim, asserting theories of disparate impact in the membership structure and hostile environment in appellee's indoor restaurant, known as the Grill Room.

At about the same time, appellant, with others, filed a complaint with the Office of the Attorney General of Maryland, identifying the same claims and setting forth the same legal theories as those alleged in the MCOHR complaint. After the Attorney's General Office launched an investigation into appellant's claims, appellee modified numerous club policies to avoid potential prosecution for unlawful discriminatory

---

2. Appellant cited in her claim a specific incident in the spring of 1993 when appellant was playing golf with her husband, a member of the country club, and one other member, Mary Biswell. Concerning that incident, the hearing examiner found that

> the Assistant Golf Pro, Larry Velt[o]n, came careening over the course in a golf cart and said to Col. Flaa: "You know women can't play on the golf course." He asked Ms. Biswell if she was a member. When she answered yes, he turned to Ms. Flaa and told her women don't belong on the course. He told her to pick up her ball and get off the course immediately. She was not allowed to finish the hole.

The Panel adopted the hearing examiner's findings on this point.

practices. No formal charges were ever brought against appellee by the State.

On January 6, 1997, following an investigation, MCOHR found reasonable grounds to believe that appellee was a place of public accommodation and had violated Montgomery County Code, § 27–8 (1987) by engaging in unlawful discriminatory practices on the basis of marital status and gender. MCOHR referred the matter to the Office of Zoning and Administrative Hearings for a public hearing. After five postponements, the parties appeared before a hearing examiner on May 17, 1999, for the first day of what became a ten-day public hearing in which 33 witnesses testified and 158 exhibits were submitted as evidence.

On September 30, 1999, the hearing examiner issued a 141–page Report and Recommendation to the Public Accommodation Panel of the MCOHR. The report stated the hearing examiner's findings that appellee was a place of public accommodation; that appellee had engaged in sex discrimination (disparate treatment) against appellant during the golf course incident; and that appellee had engaged in gender-based discriminatory practices, creating a hostile environment. The hearing examiner did not find that appellee's practices had resulted in a disparate impact on women. The hearing examiner recommended the award to appellant of $1,000.00 in damages (the statutory limit), $120,481.00 in attorney's fees, and $4,282.31 in expenses. Appellant filed a brief seeking modification by the Panel of the hearing examiner's recommendation on the disparate impact claim. Appellee filed a response to appellant's request for modification, and separately requested that the Panel modify the hearing examiner's recommendations with respect to jurisdiction and the hostile environment claim.

On March 1, 2000, the Panel held a public hearing on the matter and allowed both parties to make oral arguments. Two months later, the Panel issued a Memorandum Opinion and Order adopting the hearing examiner's finding that appellee was a place of public accommodation. The Panel also

adopted the hearing examiner's finding that there had been an act of sex discrimination against appellant, namely the incident on the golf course in the spring of 1993. *See supra,* note 1.

The Panel, however, rejected the hearing examiner's finding that appellee had engaged in sex discrimination by creating a hostile environment, concluding that such theories are reserved for employment cases. The Panel observed that, even assuming appellant could maintain a hostile environment claim in a public accommodation case, her claim still would have failed, because the facts she alleged fell short of creating a hostile environment.

In its order dated May 8, 2000, the Panel declared that appellee was a place of public accommodation and had treated appellant differently based on her sex. The Panel then granted the following equitable relief: "[Appellee] is ordered to cease and desist from all activities and conduct that discriminate against women"; "[appellee] is ordered to establish a formal and written policy against discrimination against women in the use of any facilities, services and activities of the club"; "[appellee] is ordered to provide for a confidential and unbiased procedure for filing complaints of discrimination"; and "[appellee] is ordered to provide reasonable access for [MCOHR] staff to monitor compliance with this order." The Panel awarded appellant $750.00 in damages and $3,000.00 in attorney's fees, which was a significant reduction of the hearing examiner's recommended attorney's fee award of $120,481.00.

Both parties filed petitions for judicial review in the circuit court, and the parties presented oral argument on January 19, 2001. By order entered on August 10, 2001, the court affirmed the Panel's decision on all points except its award of attorney's fees. The court concluded that the Panel erred when it calculated attorney's fees by simply multiplying $750.00, the damages awarded, by four, to equal an award of $3,000.00. The court stated: "There exists no authority for the [Panel] to determine the amount of the attorney's fees award to be a multiple of the amount of the damage award

given to [appellant]." The court stated that the Panel failed to apply the factors set forth in Montgomery County Code, § 27-7(k)(1) (1987) [3] and failed to refute the hearing examiner's findings that supported his fee recommendation of $120,481.00.

The court cited a bankruptcy case, *Allright Mort. Co. v. Hill,* 213 B.R. 943 (D.Md.1997). In that case, the United States District Court for the District of Maryland reversed an award of attorney's fees because the bankruptcy court had calculated fees based on a cost-benefit analysis, which was tantamount to determining attorney's fees based upon damages awarded to a plaintiff. Pointing to the rationale of that decision, the court in the instant case noted in a footnote to its remand opinion that the Panel's Chair had contemplated a cost-benefit analysis during oral argument.

The court reversed the Panel's decision and remanded the case with instructions for the Panel to consider the factors listed in § 27-7(k)(1) of the Montgomery County Code, as well as the degree of success in appellant's pursuit of her claims in calculating attorney's fees. The court added that appellant had prevailed on her claim that appellee was a place of public accommodation, which was a case of first impression in Maryland, and on her claim of sex discrimination, but appellant did not prevail on her claims of hostile environment and disparate

---

**3.** Montgomery County Code, § 27-7(k)(1) (1987) provides:

The complainant may be awarded reasonable attorney's fees. In determining the reasonableness of attorney's fees claimed by the complainant, the commission panel shall consider the following factors:

a. Time and labor required;
b. The novelty and complexity of the case;
c. The skill requisite to perform the legal service properly;
d. The preclusion of other employment by the attorney due to acceptance of the case;
e. The customary fee;
f. Whether the fee is fixed or contingent;
g. Time limitations imposed by the client or the circumstances;
h. The experience, reputation and ability of the attorneys; and
i. Awards in similar cases.

As we shall discuss, these factors are largely taken from the lodestar factors identified by the United States Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

impact. The court also noted that, because a prevailing plaintiff may recover fees for trial and appeal, the Panel should consider appellant's claim for fees up to the present.

Pursuant to the court's order, the Panel issued an order directing appellant to submit to the Panel an application for award of attorney's fees that applied to the instant case the factors in § 27–7(k)(1) of the Montgomery County Code. Appellant duly filed an application for attorney's fees that had accrued from May 3, 1993 to September 27, 2001.

Appellee filed an opposition, arguing, *inter alia,* that appellant's application was deficient because the time entries lacked specificity and bundled more than one activity per entry.[4] These deficiencies, appellee argued, precluded the Panel from identifying how much time counsel spent on her unsuccessful claims of disparate impact and hostile environment, and the complaint before the Office of the Attorney General.

The Panel thereafter issued an undated memorandum order, listing its preliminary findings with respect to the factors in § 27–7(k)(1) of the Montgomery County Code, and stating that appellant was entitled to reasonable attorney's fees for time spent litigating the jurisdictional question of whether appellee was a place of public accommodation. The Panel instructed appellant to submit "a revised billing report indicating the estimated time spent only on the issue of determining [appellee] to be a place of public accommodation." Appellant subsequently filed a revised billing report, which included time entries for 757.17 hours of work spent litigating the public accommodation issue, amounting to $131,476.10. In the same petition, appellant identified an additional 436.17 hours ($71,-044.04) in fees accrued while litigating the attorney's fee award.

Appellee filed an opposition, arguing that $131,476.10 was not a reasonable fee for litigating the jurisdictional issue,

---

4. Appellee attached as exhibits to its opposition a detailed listing of time entries that it deemed as unduly vague, clerical functions, or excessive charges, which added up to $80,997.80.

because that figure amounted to 70 percent of the total time counsel spent litigating the entire case. Appellee further argued that appellant's time entries were still unbundled and unduly vague.

On October 10, 2002, the Panel issued an Order and Opinion Awarding Attorney's Fees, in which the Panel addressed, preliminarily, issues of specificity and bundling of time entries. As for the specificity issue, the Panel stated:

> The Panel has scrutinized the time records involved and read the briefs of both parties, but cannot, with any degree of reliability, determine what tasks were accomplished related to which of the causes of action in this matter. We do not believe that [appellant] and her counsel have met their burden of proof to demonstrate to this Panel what time was spent on the issue of jurisdiction of the Commission.

The Panel went on to state, with respect to bundling, that appellee demonstrated in its opposition how appellant's application was "replete with examples of such bundled billings." The Panel added:

> [I]t is not our responsibility to make subjective estimates as to how such entries should be allocated. Moreover, the Panel is comprised of volunteers and does not have access to staff who could spend large amounts of time to attempt to make such estimates, even if the Panel thought it wise to attempt to do so, which it does not. For those reasons, we will make the rate percentage cuts in the final award.

The Panel then addressed each of the factors in § 27–7(k)(1) of the Montgomery County Code. With respect to time and labor required, the Panel stated that clerical work and inefficient and redundant work had to be excluded from billable time. The Panel determined that "the same task and research were performed by counsel multiple times." The Panel also considered what a reasonable client would pay, stating that it could not

> fathom how any person, dealing with the facts alleged, could have decided that it was worth $250,000 or so to litigate these issues. We believe that an attorney has a responsibil-

ity to dissuade clients or potential clients from launching costly litigation, knowing that the other party will incur enormous defense costs, where the cost/benefit ratio of that litigation is low. In this case particularly, damages were capped under the statute. Rather, it is our decision on this issue that any reasonable client would not have been willing to spend more than $25,000 to pursue claims of the type made in this proceeding.

Addressing the novelty and complexity of the case, the Panel credited appellant for successfully litigating the jurisdictional issue, which was a case of first impression in Maryland. The Panel also pointed out that appellant had presented no evidence that counsel was precluded from other employment while litigating the instant case or that there were strict time limitations.

Neither the Panel nor appellee contested the hourly rates used in calculating attorney's fees; the Panel therefore deemed the rates reasonable. The Panel decided to make no adjustment relating to the skill required to litigate the case, the customary fee for similar cases, or whether the fee was fixed or contingent.

Despite finding that lead counsel was experienced in this area of the law, the Panel declined to make an upward adjustment on that basis. With respect to awards in similar cases, the Panel found little evidence on that point, but nonetheless described appellant's request for fees as "excessive."

In addressing the factor of relative success of appellant's case, the Panel stated:

We found some of [appellant's] major theories and alleged causes of action brought in this case to be without merit and therefore declined to follow the recommendations of the Hearing Examiner on those issues of law. Moreover, in awarding the monetary damages that we did, this Panel was well aware of the fact that there was one (and only one) proven instance of "discrimination." We felt compelled by the statute to award injunctive relief, regardless of whether

we believed that there were systemic wrongs to be righted. As discussed above, only the argument and decision in favor of finding for the jurisdiction of the Commission was a major victory for [appellant].

The Panel declined to make an upward adjustment on the relative success factor.

The Panel concluded by stating that, based on its consideration of the factors set forth in § 27–7(k)(1) of the Montgomery County Code, appellant was entitled to an award of attorney's fees in the amount of $22,440.00, reflecting 132 hours of work at a rate of $170.00 per hour.

Appellant filed a petition for judicial review; appellee filed a response; and, seven months later, the parties appeared for a hearing on the matter. Ruling from the bench, the court affirmed the Panel's award of attorney's fees. Then, by order entered on June 30, 2003, the court specifically found that the Panel did not abuse its discretion or commit legal error in reaching its decision concerning appellant's award of attorney's fees. The court determined that the Panel properly applied the § 27–7(k)(1) factors and that there was substantial evidence in the record to support the Panel's decision.

From that order, appellant filed the instant appeal.

## DISCUSSION

■■■ Appellate review of the Panel's decisions is governed by Montgomery County Code, § 2A–11 (1994, April 2002 Supp.), which provides: "Any party to the [administrative] proceeding in the circuit court may appeal from such decision to the appellate courts of Maryland pursuant to the applicable provisions of the Maryland Rules of Procedure." Upon review of an administrative decision, we make our determination independent of the circuit court's ruling. *Mayer v. Montgomery County*, 143 Md.App. 261, 270, 794 A.2d 704 (2002). We "proceed[ ] directly to the review of the administrative decision itself." *Department of Health & Mental Hygiene v. Shrieves*, 100 Md.App. 283, 303, 641 A.2d 899 (1994). We are

" ' "under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law." ' " *Mayer*, 143 Md.App. at 271, 794 A.2d 704 (citations omitted). Furthermore, a " 'reviewing court "must substitute its judgment for that of the agency if . . . [its] interpretation of the applicable legal principles is different from that of the agency." ' " *Id.* (citation omitted).

Appellant argues that the Panel committed legal error by failing to apply the so called lodestar analysis in calculating its award of attorney's fees, and applying, instead, a cost-benefit analysis. As we shall discuss, we agree with appellant that the Panel, although attempting to do so, did not properly apply the lodestar approach. For that reason, we vacate the judgment and remand the case for further proceedings. Our decision makes it unnecessary to reach appellant's argument that the Panel wrongly relied on a cost-benefit analysis in calculating the fee award. We shall, however, comment briefly upon the argument at the close of our opinion.

 We begin our discussion with an explanation of the lodestar analysis. As explained by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." In calculating the initial figure, known as the lodestar, reductions should be made for time that was not " 'reasonably expended,' " which includes hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. 1933. "Where the documentation of hours is inadequate, the [trial] court may reduce the award accordingly." *Id.* at 433, 103 S.Ct. 1933. Once the lodestar is calculated, the inquiry continues by considering other factors that determine any upward or downward adjustments to the lodestar, based on the circumstances of the particular case, as measured by

the 12 factors identified in *Hensley*.[5] *Id.* at 434, 103 S.Ct. 1933.

█ "If the court believes that a fee reduction in the lodestar is indicated, it must analyze the circumstance requiring the reduction and its relation to the fee, and it must make specific findings to support its action." *Prandini v. National Tea Co.*, 585 F.2d 47, 52 (3d Cir.1978). In doing so, the trial court "should be mindful of its obligation to produce an order on attorney[']s fees that allows for 'meaningful review' by articulating the decisions made and supplying principled reasons for those decisions." *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir.1999) (citation omitted).

█ A court "may not reduce an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion." *Prandini*, 585 F.2d at 52; *accord Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.1998) (noting that " '[t]he record ought to assure us that the [trial] court did not "eyeball" the fee request and cut it down by an arbitrary percentage' ") (citation omitted). Rather, the reduction in hours requires a " 'concise but clear explanation.' " *Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 439 (7th Cir.1992) (citation omitted). An "expression of general concerns accompanied by seemingly arbitrary cuts in billable hours is neither fair to litigants nor an appropriate basis for meaningful appellate review." *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir.1994).

---

5. The Supreme Court delineated the 12 lodestar factors as follows:
 (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
 *Hensley*, 461 U.S. at 430 n. 3, 103 S.Ct. 1933. All but factors (8), (10), and (11) are identified in § 27–7(k)(1) of the Montgomery County Code.

In the case *sub judice,* the Panel stated in its decision that it could not, "with any degree of reliability, determine what tasks were accomplished related to which of the causes of action in this matter." For that reason, the Panel concluded, appellant failed to meet her burden to prove that the amount of time spent litigating the case, in relation to the tasks performed, was reasonable. The Panel explained that, because appellant's petition contained bundled time entries, it would *"make the rate percentage cuts in the final award."* (Emphasis added.)

Following this statement, the Panel made findings of fact concerning each of the lodestar factors, and declined to make either upward or downward adjustments to the fee award. The Panel concluded that, based on its lodestar analysis, appellant should be awarded $22,440.00 in attorney's fees, which is the product of 132 hours multiplied by an hourly rate of $170.00 per hour.[6]

Appellant's revised petition to the Panel, reflecting the time spent litigating the public accommodation issue, requested $131,476.10, plus $71,044.04 in fees that accrued while litigating the attorney's fees dispute, for a total of $202,520.14. That figure represented 1,193.34 hours at an average billing rate of approximately $170.00. Therefore, the Panel's award of $22,440.00 reflected an 89 percent reduction of the hours reported by appellant.

As we review the Panel's decision, we observe preliminarily that there is no indication how, if at all, the Panel calculated the lodestar before considering the adjustment factors. Calculation of the lodestar, however, is the first step in the lodestar analysis. That fact alone leads us to conclude that the Panel committed legal error in calculating the fee award and that the case must be remanded for a determination of the lodestar.

Moreover, the record contains no explanation for the Panel's across-the-board reduction of appellant's fee award after the

---

**6.** As we have mentioned, the Panel accepted, as reasonable, the hourly rate included in appellant's fee petition.

Panel applied the lodestar adjustments. In *Friolo v. Frankel,* 373 Md. 501, 512, 819 A.2d 354 (2003), the Court of Appeals addressed an issue similar to the one before us, namely "whether, in determining the amount of the fee, the [trial] court was required, as a matter of law, to use the lodestar approach and failed to do so." In *Friolo,* the trial court had mentioned briefly only two of the lodestar adjustment factors before proceeding to award attorney's fees in an amount equal to 40 percent of the damages. *Id.* at 510–11, 819 A.2d 354.

The *Friolo* Court stated at the outset that failure to apply the lodestar approach results in an error of law. *Id.* at 512, 819 A.2d 354. The Court then examined the trial court's calculation of fees and declared:

> We cannot conclude from this record that the trial court used [the lodestar] approach; its remarks were far too ambiguous in that regard. Even if it intended to apply that approach, it gave no real indication of how and why it concluded that a fee equivalent to a 40% share of the recovery was appropriate—why the $57,000 claimed should be reduced to that amount.

*Id.* at 529, 819 A.2d 354. The Court therefore remanded the case for the trial court to calculate attorney's fees using the lodestar analysis, but declined to suggest the appropriate fee award. *Id.*

Although the case *sub judice* is factually distinct from *Friolo* in the sense that the Panel did not award fees in this case based on a percentage of the damages awarded to appellant, but instead made a flat rate percentage reduction in hours, the same legal principle applies in both cases: When a court or administrative agency is charged with calculating an award of attorney's fees using the lodestar approach, the court or agency must provide its rationale for making a percentage reduction in a request for attorney's fees.

We are unaware of any authority supporting an 89 percent reduction in hours in a case in which the party seeking attorney's fees prevailed on two of its four claims and one of those claims was a matter of first impression. Moreover, in

cases that do involve sizable reductions in the reported hours, the courts have explained the rationale underlying their downward adjustments. *See, e.g., Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 552–53 (7th Cir.1999) (upholding the trial court's reduction of hours for an attorney who had failed to attempt to settle the matter before filing suit and another attorney whose work consisted solely of "simple administrative tasks that easily could have been performed by a full-time secretary"); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 226, 237 (2d Cir.1987) (affirming the trial court's decision to reduce by 50 percent the hours spent reading scientific literature, traveling, reviewing depositions, and to disallow a percentage of hours spent reading the mail and speaking on the telephone), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *Securities & Exch. Comm'n v. Goren,* 272 F.Supp.2d 202, 209–12 (E.D.N.Y.2003) (approving a magistrate's reduction of hours by 30 percent as a result of excessive and unnecessary billings, insufficient detail in the fee applications, and uncorroborated activities, all of which were identified with specificity); *Rolland v. Cellucci,* 151 F.Supp.2d 145, 157–58 (D.Mass.2001) (disallowing hours spent on post-judgment activities due to excessive time spent in multiple attorney conferences and performance of out-of-court tasks by attorneys that could have been completed by paralegals, such as making arrangements for experts and accompanying them on tours).

The Panel seems to suggest in its decision that it was incapable of explaining its reductions as a result of appellant's "unduly vague and excessive" time entries. Yet, appellee, in its challenge to appellant's fee petition, was able to identify numerous billing entries in which, according to appellee, appellant had overestimated the hours spent litigating the jurisdictional issue.

For example, appellee challenged appellant's claim in its revised billing report that 10.1 hours were spent on the jurisdictional issue in the MCOHR's Determination on January 6, 1997. Appellee argued that, because only part of the Determination was focused on jurisdiction, it was improper to

report that the full 10.1 hours were devoted to the jurisdictional question. Appellee also challenged. several other specific time entries in which appellant claimed to have spent time litigating the public accommodation issue during activities that involved a broader range of issues, *i.e.*, researching the appeal process; participating in a teleconference with the judge's law clerk; drafting a letter; researching the status of the MCOHR order during the appeals process; reviewing cases on the standard of review; revising discovery; and conducting a teleconference with the client to discuss the complaint.

Appellee also argued that appellant's billing report reflected an arbitrary reduction of the hours in certain time entries by 50 percent, when, in fact, the reductions should have been greater than 50 percent. Appellee noted, for instance, that appellant reduced the billed hours by 50 percent for the drafting and preparing of a Pre–Hearing Statement, to reflect time spent on the public accommodation question, when that document makes only brief mention of that issue. Appellee made the same argument of arbitrary time reductions with respect to several other time entries.

Given that appellee was able to discern from appellant's revised billing report the aforementioned alleged deficiencies, we cannot see how the Panel was unable to provide a clear and concise explanation of its rate percentage reduction. This is particularly so in light of the fact that appellee had drawn the Panel's attention to many of the potentially disallowed hours by appellee.

Because we are unable to discern from the record if and how the Panel calculated the lodestar figure, or why it made such a substantial reduction in the hours reported in appellant's revised billing statement, we vacate the award of attorney's fees and remand the case to the circuit court for further remand to the Panel. The Panel must first determine the lodestar amount and, if reductions are made, provide an explanation for the disallowed hours.[7]

---

7. Although we offer no opinion concerning the award of attorney's fees, we note that appellant may be entitled to reasonable post-judgment

Our disposition of this appeal does not require us to reach the merits of appellant's argument that the Panel based its award of attorney's fees on a cost-benefit analysis. We nevertheless caution the Panel on remand against utilizing a cost-benefit analysis, or any method of calculation that makes the fee award proportional to the monetary judgment awarded. The Supreme Court stated in *City of Riverside v. Rivera*, 477 U.S. 561, 577, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), that "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting [42 U.S.C.] § 1988." *Accord Blaylock v. Johns Hopkins Fed. Credit Union*, 152 Md.App. 338, 356, 831 A.2d 1120 (2003). Even assuming that the Panel did not engage in a cost-benefit analysis in considering the time and labor required to litigate the underlying case, the Panel came dangerously close to crossing that line.[8] As we have explained, the proper methodology for the instant case is the lodestar approach.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE**

---

attorney's fees if it is determined that the provisions of the Montgomery County Code applicable in this case are remedial in nature. *Pak v. Hoang*, 378 Md. 315, 331, 835 A.2d 1185 (2003) (citing federal circuit court cases involving federal fee-shifting statutes that permitted trial courts to award post-judgment attorney's fees). In *Pak*, a case involving a landlord/tenant dispute governed by a remedial statute, the Court of Appeals held that the trial court erred in concluding that it could not award post-judgment attorney's fees. *Id.* The Court stated: *"Admiral Mortgage, [Inc. v. Cooper*, 357 Md. 533, 547–48, 745 A.2d 1026 (2000),] clearly implies that, in respect to remedial statutes, courts may allow post-judgment attorney's fees." *Id.*

**8.** Appellant cites the section in the Panel's opinion titled "Time and Labor" as support for its argument that the Panel applied a cost-benefit analysis. That section reads: "We believe that an attorney has a responsibility to dissuade clients or potential clients from launching costly litigation, knowing that the other party will incur enormous defense costs, where the cost/benefit ratio of that litigation is low."

ADMINISTRATIVE DECISION AND TO REMAND THE CASE TO THE MONTGOMERY COUNTY PUBLIC ACCOMMODATION PANEL FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.