874 A.2d 1020

**MANOR COUNTRY CLUB**

v.

**Betty FLAA.**

**No. 111, Sept. Term, 2004.**

Court of Appeals of Maryland.

May 18, 2005.

Charles E. Wilson, Jr. (Amy Leete Leone of McCarthy Wilson, Rockville), on brief, for Petitioner.

Linda Hitt Thatcher (David G. Ross of Thatcher Law Firm, L.L.C., Greenbelt), on brief, for Respondent.

Beth Mellen Harrison, Francis D. Murnaghan, Jr., Baltimore, on brief of amici curiae the Public Justice Center, the ACLU of Maryland, and the D.C. Employment Justice Center.

Stephen Z. Chertkof, Heller, Huron, Chertkof, Lerner, Simon & Salzman, Washington, DC; Deborah Thompson Eisenberg, Brown, Goldstein & Levy, Baltimore, on brief of Metropolitan Washington Employment Lawyers Ass'n and Maryland Employment Lawyers Ass'n as amici curiae.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

CATHELL, Judge.

After some twelve years of extensive litigation, the appeal now before us seeks to determine the correct approach to be applied in calculating attorney's fees where the award of such fees is permitted and there existed, at the time this case was initiated and an award was made, a provision of the Montgomery County Code that delineated criteria to be applied to a determination of the discretionary award of attorney's fees to a prevailing party in a discrimination suit.

Betty Flaa, respondent, ("Mrs. Flaa") filed a complaint with the Montgomery County Office of Human Rights ("MCOHR"), which, at that time, was known as the Montgomery County Human Relations Commission, and prevailed in a substantial way on some aspects of her discrimination claim against Manor Country Club, petitioner, ("Manor"). The subsequent award of attorney's fees by a two-person Public Accommodations Panel of the Montgomery County Human Relations Commission ("Panel") in favor of Mrs. Flaa has been the subject of two petitions for judicial review by the Circuit Court for Montgomery County. In the second of these petitions, the Panel had awarded Mrs. Flaa $22,440.00 in attorney's fees, an award which the hearing court affirmed. Mrs. Flaa then appealed to the Court of Special Appeals, which reversed the trial court and remanded the case to the Panel to recalculate the award. Manor then filed a petition for writ of

certiorari [1] which we granted on December 17, 2004. *Manor Country Club v. Flaa,* 384 Md. 448, 863 A.2d 997 (2004).

Manor's petition for writ of certiorari presented the following questions for our review:

1. "When a county agency exercises its discretion to award attorney's fees, as specifically allowed by a county statute, is that agency required to determine reasonable attorney's fees according to a strict application of the lodestar approach, or is it required to determine reasonable attorney's fees in accordance with the dictates of the statute that provides it with the authority to award attorney's fees?"

2. "Did the Court of Special Appeals err by *refusing to apply an abuse of discretion standard to review* the [Public Accommodations] Panel[ ] [of the Montgomery County Human Relations Commission's] attorney's fee award where the record shows that the Panel reviewed, in detail, each factor required by the Montgomery County Code in making a fee award and, thereby, determined an award of reasonable hours times reasonable rate?" [Alterations added.] [Emphasis added.]

We hold that, when attorney's fees are permitted by statute or ordinance, the lodestar approach to the calculation of reasonable attorney's fees is generally the correct approach, *except* in instances where other criteria for the calculation of such fees are provided, as in the present case, in the fee-shifting statute.[2] As we further explain hereafter, we address the second question only insofar as is necessary in our treatment of the first—and consistent—question presented, given the discrepancy between the second question presented by Manor in its petition for writ of certiorari and in its brief.

---

1. Mrs. Flaa did not file a petition for writ of certiorari. Thus, our consideration is limited to the issues properly raised by Manor.

2. Generally, in the absence of a fee-shifting statute, the American Rule on awarding attorney's fees applies in Maryland, *i.e.,* fee-shifting is not permitted; each party is solely responsible for his own attorney's fees. This is the common law in Maryland.

## I. Facts and Procedural History

The longevity of this case has generated an extensive set of facts. The issue before this Court, however, is limited to the proper procedure for awarding attorney's fees under the circumstances of the present case. In similarly recognizing this focus, the Court of Special Appeals, in its reported decision, *Flaa v. Manor Country Club*, 158 Md.App. 483, 857 A.2d 604 (2004), confined its factual recitation of the underlying discrimination claim to those details necessary to provide context and to frame properly the issue of Mrs. Flaa's request for attorney's fees. Accordingly, we adopt in large part, the facts as set forth in the Court of Special Appeals's opinion, which states:

"On December 23, 1993, [Mrs. Flaa] filed a marital status discrimination claim with the MCOHR. She averred that [Manor's] policies, which restricted access to and use of [Manor's] golf course, were discriminatory on the basis of marital status and resulted in disparate treatment of her because of sex.[3] [After having secured legal representation, Mrs. Flaa] thereafter amended her claim [in May 1994] to add a sex discrimination claim, asserting theories of disparate impact in the membership structure and hostile environment in [Manor's] indoor restaurant, known as the Grill Room.

"At about the same time, [respondent], with others, filed a complaint with the Office of the Attorney General of Mary-

---

**3.** "[Respondent] cited in her claim a specific incident in the spring of 1993 when [she] was playing golf with her husband, a member of the country club, and one other [female] member.... Concerning that incident, the hearing examiner found that

'the Assistant Golf Pro, Larry Velt[o]n, came careening over the course in a golf cart and said to Col. Flaa: "You know women can't play on the golf course." He asked [the other female present] if she was a member. When she answered yes, he turned to Ms. Flaa and told her women don't belong on the course. He told her to pick up her ball and get off the course immediately. She was not allowed to finish the hole.'

The Panel adopted the hearing examiner's findings on this point." *Flaa*, 158 Md.App. at 487 n. 2, 857 A.2d at 607 n. 2 (footnote in original) (some alterations added).

land, identifying the same claims and setting forth the same legal theories as those alleged in the MCOHR complaint. After the Attorney's General Office launched an investigation into [Mrs. Flaa's] claims, [Manor] modified numerous club policies to avoid potential prosecution for unlawful discriminatory practices. No formal charges were ever brought against [Manor] by the State.

"On January 6, 1997, following an investigation, MCOHR found reasonable grounds to believe that [Manor] was a place of public accommodation and had violated Montgomery County Code, § 27–8 (1987) by engaging in unlawful discriminatory practices on the basis of marital status and gender.

"MCOHR referred the matter to the Office of Zoning and Administrative Hearings for a public hearing."

*Id.* at 487–88, 857 A.2d at 607 (alterations added). Six months later, on July 11, 1997, Mrs. Flaa's counsel submitted her first attorney's fees application seeking $11,699.20 in fees and $946.29 in expenses. Fourteen months later, in September 1998, she submitted to opposing counsel an updated statement showing total attorney's fees of $32,579.50 and expenses of $1,836.46.

"After five postponements, the parties appeared before a hearing examiner on May 17, 1999, for the first day of what became a ten-day public hearing in which 33 witnesses testified and 158 exhibits were submitted as evidence."

*Id.* at 488, 857 A.2d at 607. On July 9, 1999, Mrs. Flaa, through counsel, submitted a statement of damages as well as a request for damages, attorney's fees, and expenses in the amounts of $1,000.00, $138,024.00, and $4,282.31, respectively.

"On September 30, 1999, the hearing examiner issued a 141–page Report and Recommendation to the Public Accommodation Panel ["Panel"] of the MCOHR. The report stated the hearing examiner's findings that [Manor] was a place of public accommodation; that [Manor] had engaged in sex discrimination (disparate treatment) against [respondent] during the golf course incident; and that [Manor] had

engaged in gender-based discriminatory practices, creating a hostile environment. The hearing examiner did not find that [Manor's] practices had resulted in a disparate impact on women. The hearing examiner recommended the award to [Mrs. Flaa] of $1,000.00 in damages (the statutory limit), $120,481.00 in attorney's fees, and $4,282.31 in expenses. [Mrs. Flaa] filed a brief seeking modification by the Panel of the hearing examiner's recommendation on the disparate impact claim. [Manor] filed a response to [Mrs. Flaa's] request for modification, and separately requested that the Panel modify the hearing examiner's recommendations with respect to jurisdiction and the hostile environment claim.

"On March 1, 2000, the Panel held a public hearing on the matter and allowed both parties to make oral arguments."

*Flaa*, 158 Md.App. at 488, 857 A.2d at 606–07 (alterations added).

In an eight-page Memorandum Opinion and Order issued May 8, 2000, the Panel adopted the hearing examiner's findings that Manor was a place of public accommodation and that Mrs. Flaa had endured harsh treatment when she was ejected from the golf course at the time of the spring 1993 incident, but found that Manor's membership practices resulted in no disparate impact between male and female members. In addition, the Panel "rejected the hearing examiner's finding that [Manor] had engaged in sex discrimination by creating a hostile environment, concluding that such theories are reserved for employment cases." *Id.* at 489, 857 A.2d at 607 (alteration added). The Panel noted that even if such theories were available to Mrs. Flaa, the facts surrounding her claim were insufficient to rise to the level of creating a hostile environment.

The Panel looked to Montgomery County Code § 27–7 in awarding Mrs. Flaa $750.00 (of a maximum $1,000.00) in damages for humiliation and embarrassment and generally invoked the criteria of Montgomery County Code § 27–7(k)(1) in awarding attorney's fees of $3,000.00 (*i.e.*, four times the damages award). The Panel's opinion did not provide an

analysis of each § 27–7(k)(1) criterion. Rather, in reaching its attorney's fees figure, the Panel explained that it "recognize[d] that some of the time billed was also related to a proceeding before the Attorney General's office, and therefore not directly related to this case," and it echoed the hearing examiner's opinion that " 'Counsel's time is difficult to evaluate because several functions are bundled together in a manner that precludes evaluation of their reasonableness' " and "that the total time billed was excessive given time expended in similar cases with the same levels of difficulty."

Mrs. Flaa and Manor each filed petitions for judicial review in the Circuit Court for Montgomery County of the Panel's opinion and order. In her memorandum urging that a hostile environment could, indeed, constitute discrimination in Maryland public accommodation, Mrs. Flaa also addressed the issue of attorney's fees, referencing several United States Supreme Court cases that address awarding attorney's fees to a prevailing party in civil rights litigation and introduced the position that "in civil rights cases, attorneys' fees are calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate ... commonly referred to as the 'lodestar.' " Mrs. Flaa then stated that "Montgomery County Code § 27–7(k)(1) provides additional guidelines for awarding attorney's fees which are parallel to the factors considered in awarding attorney's fees pursuant to Federal civil rights fee shifting statutes" (footnote omitted). Mrs. Flaa also included as an exhibit a July 1999 copy of the Rules of the U.S. District Court for Maryland's "Appendix B, Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases." Manor's memorandum in opposition did not address Mrs. Flaa's introduction of lodestar, and responded that the Panel had properly exercised its discretion in awarding $3,000.00 in attorney's fees.

Following oral argument, the Circuit Court entered a thirty-page Memorandum Opinion and Order on August 10, 2001, affirming the Panel's decision, with the exception of its award of attorney's fees, which the Circuit Court vacated and re-

manded to the Panel. The Circuit Court held that, upon remand, the Panel:

"[M]ust consider the factors listed in Section 27–7(k)(1) and indicate to a reviewing court, how those factors, play a role in the determination of the award of attorney's fees. The [Panel] also must evaluate Flaa's degree of success in the pursuit of her claims.... The [Panel] should include in its consideration Flaa's claim for attorney's fees from July 9, 1999 to [August 10, 2001]." [Alterations added.]

The Circuit Court, labeling the Panel's award as a variation of a "cost-benefit analysis," concluded that the Panel "made an error of law in its determination of the attorney's fee award in this case and in so doing abused its discretion to make such an award." Neither party appealed this remand decision.

Pursuant to the Circuit Court's order, the Panel directed that Mrs. Flaa's counsel submit an application for an award of attorney's fees that incorporated "a detailed analysis of each of the factors contained in Section 27–7(k)(1) of the Montgomery County Code...." Counsel thereafter submitted a revised application which echoed her earlier labeling of the hearing examiner's attorney's fees award figure of $120,481.00 as "the lodestar" and then analyzed each of the § 27–7(k)(1) factors as they related to the so-called lodestar. After adding fee requests for work subsequent to the Panel's May 2000 decision, counsel arrived at final requested figures of $225,438.80 in attorney's fees and $9,306.10 in expenses. These figures represented fees from May 3, 1994—the day Mrs. Flaa engaged legal representation—until September 27, 2001—the day of the fee application.

Manor filed an opposition, dated October 22, 2001, to the application for attorney's fees and costs arguing, *inter alia*, that Mrs. Flaa's County-based litigation was duplicative of her claim filed with the State Attorney General's Office—under laws that *did not* award attorney's fees, and that more than $80,000 of her time entries were non-specific, improperly bundled, excessive, non-billable clerical functions and/or unreasonable according to § 27–7(k)(1). Manor, although not

clearly disputing the application of a lodestar methodology, urged that opposing counsel's use of a "lodestar figure" was "neither helpful nor accurate." Each party also included a July 2001 exhibit copy of the aforementioned Lodestar Appendix B, from the U.S. District Court Rules.

In March 2002, the Panel sent the parties a memorandum requesting that Mrs. Flaa's counsel submit "a revised billing report indicating the estimated time spent only on the issue of determining Manor Country Club to be a place of public accommodation[.]" In response, counsel submitted a request for attorney's fees totaling $202,520.14, consisting of $131,476.10 based on 757.17 hours spent on the issue of "place of public accommodation" plus $71,044.04 based on 436.17 hours spent litigating the attorney's fees issue. Manor opposed this revised figure contending that counsel's representation that nearly seventy percent of the total billing arose from litigating the jurisdiction of the MCOHR in terms of whether Manor constituted a place of public accommodation presented an unreasonably skewed estimate of the attorney's fees incurred on that issue.

As of the time Mrs. Flaa brought her action in 1993, Montgomery County had in place within its legislation establishing the then-denominated Montgomery County Human Relations Commission, a subsection allowing, *inter alia,* a Commission panel, upon finding that unlawful discrimination has occurred, to award reasonable attorney's fees. This provision, found at Montgomery County Code § 27–7(k)(1) (1987), provided [4] as follows:

---

4. This subsection was repealed in 2001 and the replacement subsection is now found at Montgomery County Code § 27–8 which provides:
   " **§ 27–8. Penalties and relief.**
   (a) *Damages and other relief for complainant.* After finding a violation of this article, the case review board may order the payment of damages (other than punitive damages) and any other relief that the law and the facts warrant, such as:
   (1) compensation for:
     (A) *reasonable attorney's fees;*
     (B) property damage;
     (C) personal injury;

"§ 27–7. **Administration and Enforcement.**

. . .

(k) Other Commission panel awards and remedies. In addition to the other awards and relief which are hereinafter provided, the Commission panel may, in accordance with the standards of proof set forth in Section 27–26, also make the following monetary orders determined by the Commission panel from the evidence of record as the actual damages, costs or losses involved or in such amounts as may be specified below:

(1) The complainant may be awarded reasonable attorney's fees. In determining the reasonableness of attorney's fees claimed by the complainant, the Commission panel shall consider the following factors:

    a. Time and labor required;

    b. The novelty and complexity of the case;

    c. The skill requisite to perform the legal service properly;

    d. The preclusion of other employment by the attorney due to acceptance of the case;

    e. The customary fee;

    f. Whether the fee is fixed or contingent;

    g. Time limitations imposed by the client or the circumstances;

    h. The experience, reputation and ability of the attorneys; and

    i. Awards in similar cases."

It is the dispute over the appropriate methodology—that of lodestar, or that mandated by Montgomery County Code

---

(D) unreimbursed travel or other reasonable expenses;

(E) up to $5,000 for humiliation and embarrassment, based on the nature of the humiliation and embarrassment, including its severity, duration, frequency, and breadth of observation by others; and

(F) interest on any damages from the date of the discriminatory act, as provided in subsection (c)." [Emphasis added.]

§ 27–7(k)(1)—for the awarding of attorney's fees, based on the present facts, that is central to the instant case.

On October 10, 2002, the Panel issued a revised "Order and Opinion Awarding Attorney's Fees," invoking the § 27–7(k)(1) "factors [which] encompass what has become known as the 'lodestar amount' " (alteration added). The opinion noted the Panel's interpretation that "the remand order did not require us to change the amount of our prior award of attorney's fees, but merely to explain how we calculated them so that the parties and any Judge reviewing our award could, for themselves, determine its basis." Under the opinion subheading entitled, "Lodestar Analysis Under Section 27–7(k)(1) Under the Montgomery [County] Code" (alteration added), the Panel emphasized its discretion under former Montgomery County Code § 27–1(f) to "adopt, reverse, modify or remand the recommended decision and order of the hearing examiner" and renewed its decision to reject the hearing examiner's proposed $120,481.00 award. The Panel found much of the billing to be non-specific and continued, stating:

"The Panel has scrutinized the time records involved and read the briefs of both parties, but cannot, with any degree of reliability, determine what tasks were accomplished related to which of the causes of action in this matter. We do not believe that [Mrs. Flaa] and her counsel have met their burden of proof to demonstrate to this Panel what time was spent on the issue of the jurisdiction of the Commission."

As to bundling of the time entries, the Panel determined that, although bundling may be a frequent practice in legal billing, the quantity of bundling in counsel's request inhibited the Panel's ability to "determine accurately the amount of time spent and the fees incurred for many tasks." The Panel stated:

"[I]t is not our responsibility to make subjective estimates as to how such entries should be allocated. Moreover, the Panel is comprised of volunteers and does not have access to staff who could spend large amounts of time to attempt to make such estimates, even if the Panel thought it wise to

attempt to do so, which it does not. For those reasons, we will make the rate percentage cuts in the final award."

The Panel went on to examine each of the § 27–7(k)(1) criteria, finding as follows:

"With respect to time and labor required, the Panel stated that clerical work and inefficient and redundant work had to be excluded from billable time. The Panel determined that 'the same task and research were performed by counsel multiple times.'"

*Flaa,* 158 Md.App. at 492, 857 A.2d at 609–10. The Panel, dubious that Mrs. Flaa would find it worthwhile to pursue such extensive litigation, stated:

"[W]e cannot fathom how any person, dealing with the facts alleged, could have decided that it was worth $250,000 or so to litigate these issues. We believe that an attorney has a responsibility to dissuade clients or potential clients from launching costly litigation, knowing that the other party will incur enormous defense costs, where the cost/benefit ratio of that litigation is low. In this case particularly, damages were capped [at $1,000.00] under the statute. Rather, it is our decision on this issue that any reasonable client would not have been willing to spend more than $25,000 to pursue claims of the type made in this proceeding." [Alterations added.]

In addressing the second criterion of § 27–7(k)(1), the novelty and complexity of the case:

"[T]he Panel credited [Mrs. Flaa] for successfully litigating the jurisdictional issue, which was a case of first impression in Maryland. The Panel also pointed out that [Mrs. Flaa] had presented no evidence that counsel was precluded from other employment while litigating the instant case or that there were strict time limitations.

"Neither the Panel nor [Manor] contested the hourly rates used in calculating attorney's fees; the Panel therefore deemed the rates reasonable. The Panel decided to make no adjustment relating to the skill required to litigate

the case, the customary fee for similar cases, or whether the fee was fixed or contingent.

"Despite finding that lead counsel was experienced in this area of the law, the Panel declined to make an upward adjustment on that basis. With respect to awards in similar cases, the Panel found little evidence on that point, but nonetheless described [counsel's] request for fees as 'excessive.'"

*Flaa*, 158 Md.App. at 493, 857 A.2d at 610 (alterations added).

Having concluded its examination of the § 27–7(k)(1) criteria, the Panel addressed the relative success of Mrs. Flaa's case, stating:

"We found some of [Mrs. Flaa's] major theories and alleged causes of action brought in this case to be without merit and therefore declined to follow the recommendations of the Hearing Examiner on those issues of law. Moreover, in awarding the monetary damages that we did, this Panel was well aware of the fact that there was one (and only one) proven instance of 'discrimination.' We felt compelled by the statute to award injunctive relief, regardless of whether we believed that there were systemic wrongs to be righted. As discussed above, only the argument and decision in favor of finding for the jurisdiction of the Commission was a major victory for [Mrs. Flaa]. As a result, we do not believe that [Mrs. Flaa's] award of attorney's fees should be adjusted upward as a result of [the relative success of the case]." [Alterations added.]

The Panel concluded that "[b]ased on our [l]odestar analysis of all of the factors that we are required to base this ruling upon" (alterations added) Mrs. Flaa should be awarded attorney's fees of $22,440 which comprised its figure of 132 hours multiplied by the counsel's average firm billing rate of $170/hour.[5] The Panel did not award any expenses.

On November 12, 2002, Mrs. Flaa filed her second petition in the Circuit Court seeking judicial review of the Panel's October 2002 opinion and order. Manor opposed Mrs. Flaa's

---

5. The parties have not disputed the reasonableness of this hourly rate.

petition. Mrs. Flaa urged that the Panel had committed an error of law, by failing to consider, *inter alia,* her degree of success in prevailing on her discrimination claim and that the Panel had erroneously reached its award by applying a cost-benefit analysis.[6] Following oral argument on June 17, 2003, the judge, ruling from the bench, affirmed the Panel's October 10, 2002, attorney's fees award.

In appealing to the intermediate appellate court, Mrs. Flaa emphasized anew the notion of the Panel's failure to apply the lodestar approach to the calculation of an award of attorney's fees, and this issue formed the sole basis of her appeal. She presented to the Court of Special Appeals a single matter of law issue for review:

> " 'Whether the Montgomery County Circuit Court committed an error of law by affirming the Public Accommodations Panel's Order and Opinion Awarding Attorney's Fees, in which the Panel failed to apply the lodestar method in its calculation of attorney's fees and costs.' "

*Flaa,* 158 Md.App. at 486, 857 A.2d at 606.

In a reported opinion issued September 8, 2004, the Court of Special Appeals vacated the Circuit Court's decision and directed the matter's remand to the Panel to "first determine the lodestar amount, and, if reductions are made, provide an explanation for the disallowed hours." *Flaa,* 158 Md.App. at 500, 857 A.2d at 615.

## II. Discussion

### A. Lodestar Examined

We begin by undertaking a brief overview of the much-discussed lodestar approach that, under appropriate circum-

---

**6.** As we have indicated, respondent did not file a petition for writ of certiorari, raising the cost-benefit issue. Accordingly, we do not address it although it was utilized in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), *vacated in part, Blanchard v. Bergeron,* 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989), which we discuss, *infra,* and which was proffered by respondent in support of the position she took in her brief. The primary issue before us relates to whether the Panel was required to use the lodestar approach.

stances, may be used to calculate attorney's fees, when the award of such fees is permitted generally by statute. In this Court's opinion in *Friolo v. Frankel*, 373 Md. 501, 819 A.2d 354 (2003), filed approximately three months prior to the time respondent sought review in the Court of Special Appeals, Judge Wilner examined at great length the evolution of the lodestar approach and noted the origin of this term. He explained:

"The term 'lodestar' has an Anglo–Saxon origin—'lad,' a way or path, and 'sterre,' a star. It thus was a guiding star. *See* WEBSTER'S UNABRIDGED DICTIONARY at 1062. It later came to denote a 'guiding ideal; a model for imitation.' *Id.* At some point, the term began to be applied to the method noted for determining reasonable attorneys' fees."

*Friolo*, 373 Md. at 504 n. 1, 819 A.2d at 356 n. 1. The lodestar approach, as applied in Maryland in *Friolo*, consists of the somewhat elementary formula articulated in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

"The most useful starting point for determining the amount of a reasonable fee is *the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.* This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district [trial] court may reduce the award accordingly."

*Id.* at 433, 103 S.Ct. at 1939 (alteration added) (emphasis added).

Respondent compares her status as a "successful civil rights complainant" to the situation present in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), *vacated in part, Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (*Blanchard*, 489 U.S. at 93, 109 S.Ct. at 944, noted that "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with the statute [Civil Rights

Attorney's Fees Awards Act, 42 U.S.C.A. § 1988] and its policy and purpose" (alteration added)). In *Johnson*, a case arising from an interlocutory appeal by plaintiffs who had brought a Title VII action alleging racial discrimination in their employment, the Court of Appeals for the Fifth Circuit promulgated a number of factors, later adopted by the Supreme Court in *Hensley*, to apply in exercising the court's discretion when awarding attorney's fees against a party in a civil rights action:

> "(1) *The time and labor required.* . . . (2) *The novelty and difficulty of the questions.* . . . (3) *The skill requisite to perform the legal service properly.* . . . (4) *The preclusion of other employment by the attorney due to acceptance of the case.* . . . (5) *The customary fee.* . . . (6) *Whether the fee is fixed or contingent.* . . . (7) *Time limitations imposed by the client or the circumstances.* . . . (8) *The amount involved and the results obtained* [This is a cost-benefit standard.] . . . (9) *The experience, reputation, and ability of the attorneys.* . . . (10) *The 'undesirability' of the case.* . . . (11) *The nature and length of the professional relationship with the client.* . . . (12) *Awards in similar cases.*"

*Johnson*, 488 F.2d at 717–19 (alteration added). Clearly, the factors in *Johnson* are, in large part, comparable to the factors of Montgomery County Code § 27–7(k)(1). *Johnson* also stated that "[t]he reasonableness of the award is to be judged by the abuse of discretion standard of review." *Id.* at 717.

This Court in *Admiral Mortgage, Inc. v. Cooper*, 357 Md. 533, 745 A.2d 1026 (2000) (stating in dicta that an employee from whom the employer had withheld commissions was entitled to collect attorney's fees, and since there were no criteria contained in the fee-shifting statute for the court to determine the amount of fees, the lodestar method served as the proper basis for the judge's calculation of the attorney's fees award) noted the logic of having the judge, rather than a jury, determine the attorney's fees and provided some other criteria for analysis under the lodestar approach, stating:

"In the Federal system, attorneys' fees awarded under fee-shifting statutes are calculated in accordance with the 'lodestar' approach—the product of reasonable hours times a reasonable rate. *Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). The determination of those two items, however, involves a number of factors that are both subjective and judgmental. In Maryland, they would include consideration of the factors set forth in Rule 1.5 of the Maryland Rules of Professional Conduct, among which are 'the novelty and difficulty of the questions involved' and 'the skill requisite to perform the legal service properly.' Those factors are more judgmental than fact-based and are more apt to be within the expertise of a judge rather than of lay jurors."

*Admiral Mortgage, Inc.,* 357 Md. at 552–53, 745 A.2d at 1036 (footnote omitted).

## B.  Standard of Review[7]

█ As a threshold matter, the parties also disagree on the approach we are to take in reviewing the intermediate appellate court's conclusion that the Panel "did not properly apply the lodestar approach." *Flaa,* 158 Md.App. at 495, 857 A.2d at 611. Citing her belief that the Panel's failure to employ the lodestar approach is an error of law, Mrs. Flaa urges that we undertake a *de novo* review of the Panel's attorney's fees determination. She references our opinion in *Caucus Distributors, Inc. v. Maryland Securities Com'r,* 320 Md. 313, 577 A.2d 783 (1990), wherein we stated that an agency's fact-finding and inferences are entitled to deference, but "[w]hen, however, the agency's decision is predicated solely on an error of law, no deference is appropriate and the reviewing court may substitute its judgment for that of the agency." *Id.* at

---

7. Montgomery County has its own Administrative Procedures Act, Chapter 2A of the Montgomery County Code. In § 2A–11 it provides for judicial review pursuant to the "Maryland Rules of Procedure governing administrative appeals." We have been unable to find in the County statute any standard of review different than the standard of review applicable generally to administrative appeals and the parties directed us to none.

324, 577 A.2d at 788. *See also Washington Nat'l Arena v. Comptroller*, 308 Md. 370, 378–79, 519 A.2d 1277 (1987); *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 490 A.2d 1296 (1985). On the other hand, Manor contends that the Panel's attorney's fees review, undertaken according to the factors of Montgomery County Code § 27–7(k)(1), was appropriate and Manor suggests that our evaluation should be deferential, recognizing that "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Board of Physician Quality Assur. v. Banks*, 354 Md. 59, 69, 729 A.2d 376, 381 (1999); *see also Lussier v. Maryland Racing Commission*, 343 Md. 681, 696–697, 684 A.2d 804, 811–812 (1996). Thus, although not luminously articulated, it seems that Manor is suggesting that the Panel did apply a lodestar approach in some fashion, but that approach was in conformance with the standards described in Montgomery County Code § 27–7(k)(1), and we should leave the decision of the Panel untouched if we find that the Panel did not abuse its discretion, *i.e.*, it had substantial evidence to support its attorney's fees award. As we have previously stated, "[a] court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv., Inc. v. People's Counsel*, 336 Md. 569, 577, 650 A.2d 226, 230 (1994), *quoted in Bucktail, LLC v. County Council*, 352 Md. 530, 552–53, 723 A.2d 440, 450 (1999).

■ We were confronted with similarly competing arguments in *Friolo*. In *Friolo*, a case in which this Court was called upon to evaluate whether the lodestar approach was the appropriate methodology to calculate the award of attorney's fees in a case litigated under the Maryland Wage and Hour Law, Md.Code (1991, 1999 Repl.Vol.), §§ 3–401 *et seq.* of the Labor and Employment Article and under the Wage Payment and Collection Law, Md.Code (1991, 1999 Repl.Vol.), §§ 3–501 *et seq.* of the Labor and Employment Article, we determined

that awarding a fee was a permitted, discretionary act,[8] thus mooting the argument of legal error in respect to that issue. Contrary to the·*Friolo* petitioner's urging that this Court in *Admiral Mortgage, Inc. v. Cooper,* 357 Md. 533, 745 A.2d 1026, had "'strongly suggested' that Maryland courts follow the lodestar approach," *Friolo,* 373 Md. at 518, 819 A.2d at 364, we determined in *Friolo* that, although lodestar was the correct approach in the *Friolo* case, application of lodestar is a fact-sensitive endeavor:

> "[T]he lodestar approach is *ordinarily* the appropriate one to use in determining a reasonable counsel fee. We stress, however, that the approach we approve is broader than simply hours spent times hourly rate but also includes careful consideration of appropriate adjustments to that product, which, in almost all instances, will be case-specific."

*Id.* at 505, 819 A.2d at 356 (emphasis added). Accordingly, our *Friolo* holding did not establish lodestar as the only approach for calculation of an award of attorney's fees in Maryland cases.

In the instant case, we similarly find it unnecessary to further the debate as to whether the Court of Special Appeals's decision should have examined the lower court's decision for error of law or abuse of discretion. As we have indicated, and as we shall explain, the use of the lodestar approach, under the circumstances of the instant case, was unnecessary, given the presence of the Montgomery County Code § 27–7(k)(1) criteria. As we explain further, the Panel's invocation—and subsequent analysis of those criteria, following the earlier remand, was generally sufficient.

### C.  Attorney's Fees Methodology

█  We continue our explanation by examining whether, even in light of the § 27–7(k)(1) criteria, the Panel was

---

8. By reason that it is a discretionary act, the granting of fees in Maryland is not mandatory, although it may be an abuse of discretion to deny such fees in a given circumstance. The statutes in *Friolo* and in the present case state that the court (or the agency) *may* allow fee-shifting.

required to use lodestar to determine an attorney's fees award. That is, we must determine whether lodestar can preempt a similar methodology or scheme set out in a local code. We first note, again, that the American Rule generally applies in Maryland, except when a fee-shifting statute or a contractual provision to the contrary exists.[9] The American Rule is the Maryland common-law rule. Generally, the lodestar rule is one method of calculation when a statute trumps the common-law rule.

The Court of Special Appeals determined that the Panel's failure to arrive at an initial lodestar figure was erroneous. That court stated:

> "As we review the Panel's decision, we observe prelimi-narily that there is no indication how, if at all, the Panel calculated the lodestar before considering the adjustment factors. Calculation of the lodestar, however, is the first step in the lodestar analysis. That fact alone leads us to conclude that the Panel committed legal error in calculating the fee award and that the case must be remanded for a determination of the lodestar."

*Flaa*, 158 Md.App. at 497, 857 A.2d at 612–13.

Manor contends, however, that, under the facts of the instant case, instead of a lodestar method, Montgomery County Code § 27–7(k)(1) governs the calculation of any attorney's fees that the Panel may, in its discretion, award in this case. Manor states that "under this Montgomery County Code provision, no precise, mathematical, formulaic application of the 'lodestar amount' is required since the statute itself ensures that a Panel adhering to the statute *will* include a

---

**9.** See *Caffrey v. Department of Liquor Control*, 370 Md. 272, 805 A.2d 268 (2002) for a further discussion of the American Rule and, in respect to certain exceptions, not relevant here, *see St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 318 Md. 337, 346–47, 568 A.2d 35, 39 (1990) as to wrongful conduct of a managing director of a corporation operating for his own benefit instead of for the benefit of the corporation and his actions force the corporation to initiate litigation against a third party, and *McGaw v. Acker Merrall & Condit Co.*, 111 Md. 153, 73 A. 731 (1909), as to damages in malicious prosecution actions, *Tully v. Dasher*, 250 Md. 424, 442, 244 A.2d 207, 217 (1968).

determination of reasonable hours in its consideration of reasonable attorney's fees." Manor urges that the Court of Special Appeals was incorrect in holding that its inability to "determine whether the Panel *first* established a lodestar figure, prior to reviewing the factors set forth in the Montgomery County Code, [leads to the conclusion that] the Panel erred as a matter of law." Manor summarizes its argument as follows:

"Whether we say that the Panel determined the 'reasonable hours' by evaluating the 'time and labor required' factor of the [§ ] 27–7(k)(1) factors, or we say that, in computing the lodestar figure the Panel determined that it was reasonable to spend 132 hours on the jurisdictional issue, but then, applying the factors from *Friolo* and *Hensley*, determined that no upward or downward adjustment of that number is necessary, the only difference is a matter of semantics." [Alteration added.]

Mrs. Flaa, on the other hand, argues to this Court that any award of attorney's fees under civil rights legislation must be comprised of a two-step process: First, the calculating and awarding entity—whether an administrative body or a court—*must* determine a lodestar, *i.e.*, the product of a reasonable number of hours expended on the case multiplied by a reasonable hourly fee. Next, the calculating and awarding entity *may* adjust the lodestar-derived figure upward or downward based upon the application of adjustment factors such as those prescribed in Montgomery County Code § 27–7(k)(1) or such as those delineated in *Johnson* and adopted by *Hensley*. Thus, according to respondent, the Court of Special Appeals was correct in its finding that the Panel's failure to arrive at an initial lodestar number was a repudiation of the case law, and thus, an error of law, and not simply an option within the discretion of the calculating and awarding entity.

Respondent further argues that § 27–7(k)(1) cannot be considered either the functional equivalent or an acceptable substitute for the lodestar method because the § 27–7(k)(1) criteria address only the "second, and far less important, part" of the lodestar test, *i.e.*, guidelines by which to increase or

decrease an already lodestar-calculated attorney's fees award. Thus, according to respondent, the so-called "secondary adjustment factors" contained in the MCOHR's former fee-shifting provision did not abolish the requirement that the Panel employ the lodestar approach because:

> "(i) the county statute is incomplete on its face in that it does not require the Panel to begin its analysis with a calculation of 'reasonable hours times reasonable rate' and is missing important lodestar 'adjustment factors'; and (ii) the county statute does not reflect legislative intent to preempt or supersede common law." [10]

Our review of the considerable procedural history of this case reveals that Mrs. Flaa did not urge the application of the lodestar approach until such time as she filed her first petition for judicial review in the circuit court. Nevertheless, respondent suggests that *Friolo* should govern the award of attorney's fees under fee-shifting statutes in Maryland and she urges this Court to extend its *Friolo* holding, which applied the lodestar method to the fee-shifting statutes invoked in that case, to the matter before us. She observes that her case is a particularly worthy candidate for a lodestar calculation given its civil rights genre and the apparent novelty of its issues.

Manor contends that *Friolo* does not stand for the proposition that attorney's fees can be calculated *only* upon the calculation initially of a total number of hours multiplied by an hourly rate. Rather, according to Manor, *Friolo* indicates that, in the absence of other statutory criteria for calculating an attorney's fees award, one must begin with a lodestar figure, *i.e.*, a result obtained by multiplying a number of hours by an hourly rate. In the present case, Manor contends that the presence of the Montgomery County Code § 27–7(k)(1) criteria renders use of the lodestar method unnecessary, and

---

**10.** Respondent fails to recognize that, but for the statute, the American Rule would apply and there would be no fee-shifting, thus, making the issue of a lodestar approach non-existent. Under the common law applicable in this State, there is no fee-shifting. Fee-shifting in Maryland arises by way of statute.

the Panel's application of the Montgomery County Code criteria pursuant to the circuit court's mandate has resulted in a properly-determined discretionary award of attorney's fees.

We determine, under the circumstances of the present case, that the criteria of § 27–7(k)(1) are the proper method by which to determine reasonable attorney's fees. Respondent has clearly misunderstood the thrust of our *Friolo* decision. By virtue of this Court's opinion in *Friolo*, we did not mandatorily "adopt a lodestar approach . . . as a matter of Maryland law" *id.* at 520, 819 A.2d at 366, for all situations. Rather, our language articulated in *Friolo* applied lodestar to Md.Code (1991, 1999 Repl.Vol.), §§ 3–427 and 3–507.1 of the Labor and Employment Article, and indicated a general approval of the approach in conjunction with other fee-shifting statutes that provide for the possible award of attorney's fees, but lack criteria for how to calculate such fees. *Friolo*, 373 Md. at 504–05, 819 A.2d at 356. *Friolo* did not preclude the use of criteria other than those found in *Johnson; Hensley*; Rule 1.5 of the Maryland Rules of Professional Conduct, or others.

In the present matter, the case-specific facts indicate that at the time the Panel elected to make an attorney's fees award, legislative directions existed in Montgomery County Code § 27–7(k)(1), which were required to be considered in arriving at an award amount. Accordingly, these criteria formed the basis of the Panel's award consideration, and in basing its award on these criteria, the Panel did not act contrary to *Friolo*. Thus, *Friolo* remains intact as to those cases for which it is applicable. Mandatory legislative criteria, where they exist, for the setting of fee-shifted awards, are entirely appropriate for determining an award of attorney's fees, and in such circumstances, are to be utilized. In such instances where a statute creates the right to fee-shifting and contains criteria for the setting of such fees, the statutory criteria are to be invoked primarily; not as adjustment factors after the determination of some initial, foundational number under a lodestar approach.

As a final matter, we note that respondent has observed that Montgomery County has replaced the entirety of Montgomery County Code § 27–7(k)(1) with Montgomery County Code § 27–8(a)(1)(A) which provides simply for the award of "reasonable attorney's fees" upon a finding of a violation of the County's Human Rights article. Montgomery County's ordinance change is noteworthy only for its prospective effect. The change does not alter the result in this case, as the Panel made its initial attorney's fees determination in 2000, prior to the repeal of Montgomery County Code § 27–7(k)(1), which occurred in 2001.

### III. Conclusion

The criteria in former Montgomery County Code § 27–7(k)(1) make unnecessary the use of a lodestar approach for calculating the attorney's fees awarded to a successful claimant under Montgomery County's Commission on Human Rights Article. The Panel's attorney's fees calculation made pursuant to an analysis of each of the criterion contained in the former § 27–7(k)(1) resulted in a properly-determined award of attorney's fees.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTION TO AFFIRM THE JUNE 30, 2003 JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

BELL, C.J., files a dissenting opinion.

BELL, Chief Judge, dissenting.

Betty Flaa, the respondent, filed with the Montgomery County Office of Human Rights ("MCOHR") a marital status discrimination claim against Manor Country Club, the petitioner. That claim, to which she later added a claim for sex discrimination, alleged that the petitioner's policies with respect to access to and use of its golf course were discriminatory on the basis of marital status and resulted in disparate

treatment of women, in general and her, in particular, because of sex. She also asserted theories of disparate impact against women in the membership structure and a hostile environment for them in the petitioner's indoor restaurant.

The respondent substantially prevailed on her claims. While, to be sure, the MCOHR panel did not adopt all of the findings and conclusions of the hearing examiner [1] assigned to conduct the hearing in the case, it did adopt the most significant, the foundational one, that Manor Country Club is a place of public accommodation. The Panel also agreed that the petitioner had engaged in the act of sex discrimination against the respondent that the hearing examiner had identified. Having made those findings, it ordered the petitioner "to cease and desist from all activities and conduct that discriminate against women;" "to establish a formal and written policy against discrimination against women in the use of any facilities, services and activities of the club;" "to provide for a confidential and unbiased procedure for filing complaints of discrimination;" and "to provide reasonable access for [MCOHR] staff to monitor compliance with [its] order." As the hearing examiner had done, although in lesser amounts, the panel awarded the respondent monetary damages and attorney's fees. Rather than the maximum damages of $1,000 recommended by the hearing examiner, the panel awarded the petitioner $750.00 in damages, and significantly reduced the $120,481 in attorney's fees recommended, awarding the petitioner only $3,000.

The Circuit Court for Montgomery County having reversed the attorney's fee award, noting that it was arrived at without regard to the factors enumerated in Montgomery County Code, § 27–7(k)(1) (1987) [2] and without refuting the findings

---

1. The hearing examiner found that Manor Country Club was a place of public accommodation; that the petitioner had engaged in one instance of sex discrimination, by treating her right of access to use of the golf course disparately; and that the petitioner had engaged in gender-based discriminatory practices, creating a hostile environment.

2. Section 27–7(k)(1) of the Montgomery County Code, as in effect when this case was decided, provides:

supporting his fee recommendation, made by the hearing examiner, and remanded the case for a redetermination of the award, the panel issued its Order and Opinion Awarding Attorney's Fees. In its Opinion, the panel addressed each of the § 27–7(k)(1) factors, concluding, in the Order, to award attorney's fees of $22,440, "[b]ased on our Lodestar analysis of all of the factors that we are required to base this ruling upon." That amount was calculated on the basis of 132 hours multiplied by the average firm billing rate, $170 per hour, of the petitioner's counsel. In considering, as it was instructed to do, the degree of success the outcome represented for the petitioner, the panel observed:

"We found some of [the respondent's] major theories and alleged causes of action brought in this case to be without merit and therefore declined to follow the recommendations of the Hearing Examiner on those issues of law. Moreover, in awarding the monetary damages that we did, this Panel was well aware of the fact that there was one (and only one) proven instance of 'discrimination.' We felt compelled by the statute to award injunctive relief, regardless of whether we believed that there were systemic wrongs to be righted. As discussed above, only the argument and decision in favor of finding for the jurisdiction of the Commission was a major victory for [the respondent]."

Accordingly, not believing the degree of success the respondent enjoyed to have been significant, the panel declined to

---

"The complainant may be awarded reasonable attorney's fees. In determining the reasonableness of attorney's fees claimed by the complainant, the commission panel shall consider the following factors:

"a. Time and labor required;

"b. The novelty and complexity of the case;

"c. The skill requisite to perform the legal service properly;

"d. The preclusion of other employment by the attorney due to acceptance of the case;

"e. The customary fee;

"f. Whether the fee is fixed or contingent;

"g. Time limitations imposed by the client or the circumstances;

"h. The experience, reputation and ability of the attorneys; and

"i. Awards in similar cases."

adjust the attorney's fees upward. Earlier, when addressing the time and labor factor, the panel had commented, tellingly:

"We cannot fathom how any person, dealing with the facts alleged, could have decided that it was worth $250,000 or so to litigate these issues. We believe that an attorney has a responsibility to dissuade clients or potential clients from launching costly litigation, knowing that the other party will incur enormous defense costs, where the cost/benefit ratio of that litigation is low. In this case particularly, damages were capped under the statute. Rather, it is our decision on this issue that any reasonable client would not have been willing to spend more than $25,000 to pursue claims of the type made in this proceeding." [Alterations Added]

I have not the slightest doubt that the panel erred in its determination of the attorney's fees in this case and that, as the Court of Special Appeals held, the Circuit Court erred in affirming that award. As the Circuit Court on initial review noted, although the respondent did not prevail on her claims of hostile environment and disparate impact, she prevailed on a matter of first impression in Maryland, her claim that Manor Country Club was a place of public accommodation, and on her claim of sex discrimination. Moreover, whatever might have been the motivation of the panel in awarding it, the respondent obtained the injunctive relief she sought, which relief benefited, in any event, not just the respondent, but all women using any of the petitioner's "facilities, services and activities." Furthermore, this discrimination matter has taken more than ten years to resolve, without regard to the appeal concerning the attorney's fees, the fees as to which are also recoverable by the prevailing party. Like the Court of Special Appeals, I am unable to understand the reason for, or discern support for, "an 89 percent reduction in hours in a case in which the party seeking attorney's fees prevailed on two of its four claims and one of those claims was a matter of first impression." *Flaa v. Manor Country Club*, 158 Md.App. 483, 498, 857 A.2d 604, 613 (2004). It is even more perplexing when it is recalled that the respondent was awarded an amount equal to three-quarters of the maximum damages allowed.

It is absolutely clear to me that the panel did precisely what the Circuit Court, on initial review, surmised that it had done, engaged in and applied a cost-benefit analysis. Such an approach, because it requires the attorney's fee award to be proportional to the monetary judgment award, is inconsistent with the purpose of the ordinance, to allow, not discourage, access to the courts for meritorious, though small, in terms of actual damages, claims. *See City of Riverside v. Rivera*, 477 U.S. 561, 577, 106 S.Ct. 2686, 2695, 91 L.Ed.2d 466, 482 (1986) ("[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting [42 U.S.C.] § 1988."); *Blaylock v. Johns Hopkins Fed. Credit Union*, 152 Md.App. 338, 356, 831 A.2d 1120, 1130 (2003). *See also Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464, 466 (1991), in which the Ohio Supreme Court offered another argument against proportionality:

> "In addition to addressing an individual wrong, pursuing a claim under the Act may produce a benefit to the community generally. A judgment for the consumer in such a case may discourage violations of the Act by others. Prohibiting private attorneys from recovering for the time they expend on a consumer protection case undermines both the purpose and deterrent effect of the Act."

The validity of that argument is not at all affected by the fact that the statute at issue in that case was a consumer protection statute.

I dissent.[3]

---

**3.** I am aware that the respondent did not cross-appeal on the issue of whether the panel improperly applied a cost benefit analysis and that, although going to some pains to frame it, the Court of Special Appeals purported not to reach the merits of that issue. Nevertheless, I believe it would be putting form over substance to overlook the thrust, the real substance, of the intermediate appellate court's analysis.